EMMANUEL MARCANO RIVERA, recurrido, *v.* DEPARTAMENTO DE ESTADO como DIRECTOR EJECUTIVO DE JUNTAS EXAMINADORAS, ETC., peticionarios.

*Número:* CC-2003-752 *Resuelto:* 23 de febrero de 2005

*Roberto J. Sánchez Ramos*, procurador general, abogado de la parte peticionaria; *Julio César López Gerena*, abogado de la parte recurrida.

El Juez Asociado Señor Fuster Berlingeri emitió la opinión del Tribunal.

Nos toca precisar las facultades de una junta examinadora cuando el examen de reválida de una profesión queda viciado por la acción fraudulenta de alguno de sus miembros.

I

El 5 de mayo de 2001, Emmanuel Marcano Rivera tomó la parte teórica del examen de reválida para perito electri-

cista ofrecido por la Junta Examinadora de Peritos Electricistas (Junta). Tomó la parte práctica del examen el 12 de mayo del mismo año.

En junio de 2001 Marcano Rivera recibió una carta, con fecha de 22 de junio, suscrita por Pedro Sosa Reyes, Subdirector de la División de Juntas Examinadoras del Departamento de Estado. En la misiva, Sosa Reyes le informaba al aspirante que había aprobado la parte teórica del examen de reválida con cien por ciento y la parte práctica con ochenta por ciento. La carta contenía, además, instrucciones para obtener la licencia en cuestión. Marcano Rivera presentó la documentación requerida.

En ese mismo año la Directora de las Juntas Examinadoras del Departamento de Estado advino en conocimiento de unas alegadas irregularidades cometidas durante el proceso de preparación o administración del examen de reválida para perito electricista ofrecido el 5 de mayo de 2001. Como prueba de ello, recibió un documento que contenía preguntas de selección múltiple similares a las que contenía el referido examen con las respuestas correctas ennegrecidas. A raíz de esto, le solicitó al Dr. Gabriel Cirino Gerena, Consultor Psicométrico del Departamento de Estado (Consultor), que realizara una investigación sobre este asunto. El Consultor preparó un informe sobre el particular que reveló, entre otros datos, lo siguiente:

1. En el documento investigado se incluían 52 de las 60 preguntas que aparecieron en la prueba.
2. En el documento aparecían 6 preguntas que fueron incluidas en el borrador inicial discutido con la Junta, que no se utilizaron en el examen.
3. Las preguntas que aparecían en el documento y en el examen, seguían un orden similar.
4. Una de las preguntas del documento aparece con correcciones hechas el día de la reunión con la Junta, sin embargo, no aparece con las correcciones posteriores hechas en la Corporación Psicométrica.

Como parte de la referida investigación, se realizó un estudio comparativo de las puntuaciones obtenidas por los aspirantes que habían tomado el examen en más de una ocasión. Este estudio reveló que una cantidad sustancial de los aspirantes que no habían aprobado el examen en ocasiones anteriores —por haber obtenido una puntuación menor de veinte puntos— había aprobado el examen del 5 de mayo de 2001 con puntuaciones que sobrepasaban los cuarenta puntos, y algunos hasta obtuvieron una puntuación perfecta, cincuenta puntos. Además, una gran cantidad de los aspirantes que tomaron por primera vez el examen obtuvo una puntuación perfecta, resultado catalogado de inusual por el Consultor.

El informe del Consultor concluía que se había incurrido en serias irregularidades en el manejo y la administración del examen ofrecido el 5 de mayo de 2001, y recomendaba su invalidación y la redacción de un nuevo banco de preguntas.

Ante la seriedad de los hallazgos de la investigación, el asunto fue referido a la consideración del Secretario de Estado, quien ordenó una investigación administrativa sobre las alegadas irregularidades y emitió una serie de directrices en relación con el asunto. También solicitó la intervención del Departamento de Justicia.

A tenor con las directrices emitidas, representantes de la Oficina de Asuntos Legales del Departamento de Estado se reunieron con los miembros de la Junta y les informaron sobre los resultados de la investigación. Les informaron, además, del referido al Departamento de Justicia debido a sospechas de que el material del examen había sido provisto previamente a los estudiantes por miembros de la Junta. Entre otras cosas, se prohibió a los miembros de la Junta que expidieran licencias a los aspirantes que habían tomado y aprobado el examen teórico el 5 de mayo de 2001. *De manera que no se expidió licencia alguna a los aspiran-*

*tes que aprobaron el examen teórico el 5 de mayo de 2001, incluyendo al recurrido Marcano Rivera.*

Por su parte, el Departamento de Justicia refirió la información recopilada al Negociado de Investigaciones Especiales, el cual realizó una investigación minuciosa del asunto y concluyó que *los estudiantes habían tenido acceso al material del examen debido a que algunos miembros de la Junta se lo habían provisto.* Ello dio lugar a que se presentaran cargos criminales por violaciones a la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico contra Helsone Ramos Vallés, Presidente de la Junta, y José Pagán Morales, otro de los miembros de la Junta. Ambos resultaron convictos tras admitir los hechos y hacer alegación de culpabilidad por delitos menos graves.

Por otro lado, estando aún en curso la aludida investigación, el 20 de marzo de 2002 la representante legal de Marcano Rivera inquirió, mediante una carta dirigida a Sosa Reyes, sobre la licencia que esperaba su cliente. Esta misiva fue, a su vez, contestada por Helsone Ramos Vallés, Presidente en aquel momento de la Junta. Ramos Vallés explicó en la Carta de 2 de mayo de 2002, que a pesar de que el aspirante había aprobado el examen, *no se le permitía expedir una licencia a su favor puesto que se estaba realizando una investigación sobre unas alegadas irregularidades en el proceso de reválida.*

Luego de concluida la investigación criminal y la correspondiente presentación de cargos criminales contra los miembros de la Junta implicados en las irregularidades, el 25 de septiembre de 2002 la Junta emitió una resolución mediante la cual determinó anular el examen de 5 de mayo de 2001. Esto debido a que las irregularidades con relación al examen imposibilitaban la certificación de un resultado confiable.

El 27 de septiembre de 2002 Josué Martínez Grueiro, Presidente Interino de la Junta, cursó a Marcano Rivera

una misiva para notificarle la anulación del examen de 5 de mayo de 2001 debido a las serias irregularidades referidas. Le indicó, además, que podría tomar el examen nuevamente, *libre de costo*. Todos los aspirantes recibieron comunicaciones similares.

El 9 de octubre de 2002 la Junta publicó un aviso en un periódico de circulación general mediante el cual se notificó la anulación del examen teórico de la reválida de perito electricista de 5 de mayo de 2001. El aviso también indicaba que los aspirantes que habían tomado el examen ese día podían tomarlo otra vez, libre de costo, en noviembre de 2002.

El 11 de octubre de 2002 la representación legal de Marcano Rivera envió una comunicación al Presidente Interino de la Junta mediante la cual solicitó la reconsideración de la referida decisión de anular el examen. Ésta fue denegada mediante un Carta de 24 de octubre de 2002 y suscrita por Martínez Grueiro. En la misiva, Martínez Grueiro explicaba que debido a las irregularidades ocurridas resultaba imposible certificar los resultados del examen como válidos, pero que los aspirantes que habían tomado el examen en esa fecha podrían tomarlo de nuevo, libre de costo.

Ante la determinación final de la Junta, el 22 de noviembre de 2003 Marcano Rivera presentó una petición de revisión ante el antiguo Tribunal de Circuito de Apelaciones, en la cual alegó que la Junta había expedido una licencia de perito electricista a su favor y luego le había privado de ella en violación del debido proceso de ley. Apoyó su alegación en el texto de la carta que recibiera durante el mes de mayo de 2002, suscrita por Ramos Vallés, en la cual se declaraba lo siguiente:

> ... el día 13 de junio de 2001 expedí la licencia núm. 10110 de Perito Electricista y desde el 19 de julio de 2001 algunos altos funcionarios del Departamento de Estado no me permiten expedir las licencias de los que aprobaron [el examen] teórico del 5 de mayo de 2001, debido a que un ciudadano alega que se

cometi[eron] irregularidades en el proceso de la reválida, por lo cual fue referido al Departamento de Justicia para investigación .... Apéndice de la Petición de *certiorari*, pág. 18.

El 23 de junio de 2003 el tribunal apelativo dictó una sentencia mediante la cual revocó la determinación de la Junta de anular la parte teórica del examen de 5 de mayo de 2001. El foro apelativo determinó que se había despojado a Marcano Rivera de su licencia de perito electricista en violación del debido proceso de ley, y devolvió el caso a la Junta para que le ofreciera a Marcano Rivera una vista adjudicativa en la cual se le diera la oportunidad de ser oído y pudiera confrontar la prueba en su contra. El Procurador General solicitó la reconsideración de tal determinación, la cual fue denegada mediante una resolución notificada el 26 de agosto de 2003.

Inconforme con la determinación del tribunal apelativo, el Departamento de Estado, mediante su Director Ejecutivo de Juntas Examinadoras y representado por el Procurador General, acudió ante nos y alegó lo siguiente:

> *Erró el Honorable Tribunal de Circuito de Apelaciones al resolver que la Junta Examinadora de Peritos Electricistas estaba imposibilitada de tomar la medida de anular el examen teórico de la reválida para Perito Electricista tomado por el Sr. Marcano Rivera, aquí recurrido, en mayo de 2001, sin antes conceder a éste un procedimiento adjudicativo formal, a pesar de haberse evidenciado que se condujo una investigación que demostró la comisión de unas serias irregularidades por parte de los miembros de la propia Junta que viciaron los resultados del referido examen, y de que dicho organismo no llegó a emitir licencia alguna a favor del aspirante Marcano Rivera, por lo que el presente caso no involucra la cancelación o suspensión de una licencia por parte de la Junta.* (Énfasis suplido.) Petición de *certiorari*, pág. 12.

El 7 de noviembre de 2003 expedimos el recurso solicitado. El 24 de febrero de 2004 la parte peticionaria presentó su alegato. La parte recurrida presentó el suyo el 30 de julio de 2004. Pasamos a resolver.

## II

■ Es bien conocida la facultad del Estado para regular el ejercicio de las profesiones como parte de su poder de razón de estado, ello con el importante "fin de proteger la salud y el bienestar públicos". *Pueblo v. Villafañe, Contreras*, 139 D.P.R. 134, 152 (1995). Véase *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735 (1992). Además, está firmemente establecido que estas disposiciones no despojan a los ciudadanos de sus profesiones, sino que las regulan por razón del eminente interés público de que están revestidas. *San Miguel Lorenzana v. E.L.A.*, 134 D.P.R. 405 (1993); *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567 (1993); *Román v. Trib. Exam. de Médicos*, 116 D.P.R. 71 (1985).

■ El Estado puede establecer unos requisitos de conocimientos mínimos, capacidad, destreza, entereza moral o cualquier otro que esté racionalmente relacionado con el objetivo de garantizar que los examinados posean la competencia para practicar la profesión en forma adecuada. *De Paz Lisk v. Aponte Roque*, 124 D.P.R. 472 (1989); *Santiago v. Trib. Exam. de Médicos*, 118 D.P.R. 1 (1986).

■ El Estado también puede prohibir la práctica de la profesión si no se ha obtenido antes una licencia, permiso o certificado de alguna entidad u oficial examinador. *Col. Ing. Agrim. P.R. v. A.A.A.*, supra. De este modo, se ha delegado en las Juntas Examinadoras la tarea de corroborar que un ciudadano posea los conocimientos y las destrezas necesarias para ejercer determinada profesión. A estos organismos se les ha reconocido una extensa discreción "en la fijación de las normas y procedimientos que han de regir los procesos de admisión o certificación de personas al ejercicio" de profesiones u oficios. *Asoc. Drs. Med. Cui. Salud v. Morales*, supra, pág. 586. Véase *Santiago v. Trib. Exam. de Médicos*, supra. Sus actuaciones se deben regir por el criterio de lo razonable. *Santiago v. Trib. Exam. de Médicos*, supra. Empero, al ejercer su función, no pueden violar los

derechos constitucionales de los aspirantes amparándose en su amplia facultad revisora. *Torres v. Junta Ingenieros*, 161 D.P.R. 696 (2004).

## III

La Junta Examinadora de Peritos Electricistas fue creada mediante la Ley Núm. 115 de 2 de junio de 1976 (20 L.P.R.A. sec. 2701) (Ley), para que fuera "el organismo encargado de pasar juicio sobre la capacidad de los aspirantes a desempeñar este oficio".[1]

El Art. 5 de la Ley dispone, en lo aquí pertinente, las facultades que le asisten a la Junta:

> (a) Autorizará el ejercicio de la profesión de perito electricista, ayudante de perito electricista y aprendiz de perito electricista, mediante la concesión de licencia, a aquellas personas que *reúnan los requisitos y condiciones que se fijan en este capítulo.*
>
> . . . . . . . .
>
> (e) Examinará a aquellas personas que soliciten licencia y cualifiquen para ello de acuerdo con lo dispuesto en este capítulo.
>
> . . . . . . . .
>
> (g) Denegará, suspenderá o revocará licencias por las razones que se consignan en este capítulo.
>
> . . . . . . . .
>
> (k) *Realizará cualquier gestión y tendrá cualquier otra facultad en adición a las consignadas que sea necesaria para cumplir con las disposiciones de este capítulo.* (Énfasis suplido.) 20 L.P.R.A. sec. 2705.

El Art. 8 de la Ley, 20 L.P.R.A. sec. 2707, detalla los requisitos que tiene que cumplir toda persona que aspire a la licencia de perito electricista, entre los cuales se encuentra la aprobación de un examen de reválida. Por su parte, el Art. 9 de la Ley, 20 L.P.R.A. sec. 2708, versa sobre el referido examen de reválida:

---

[1] Véase Exposición de Motivos de esta ley, 1976 Leyes de Puerto Rico 352, 353.

(a) Los exámenes se ofrecerán por la Junta tres (3) veces al año, cada cuatro (4) meses.

(b) Los exámenes constarán de dos (2) partes, una práctica y otra teórica. Cada parte tendrá un valor de puntos que la Junta determine conforme a su reglamento y la puntuación mínima para pasar cada parte será de setenta por ciento (70%) de ésta.

(c) Disponiéndose, que los aspirantes *tendrán que pasar ambas partes del examen para que les sea otorgada la licencia.*

(d) Si un aspirante fracasa en una parte del examen y aprobase la otra, solamente se tendrá que reexaminar en la parte fracasada. La parte aprobada expirará al término de dos (2) años y tendrá que reexaminarse en ambas partes. (Énfasis suplido.)

■ Por otro lado, según el Art. 15 de la Ley, la Junta puede denegar la concesión de una licencia previa notificación y audiencia a cualquier persona que: (a) trate de obtener una licencia mediante fraude o engaño; (b) no reúna los requisitos para obtener una licencia, o (c) haya sido declarada incapacitada mentalmente por un tribunal competente y se establezca su incapacidad ante la Junta mediante peritaje médico. 20 L.P.R.A. sec. 2714.

Además, el Art. 16 dispone que:

La Junta podrá suspender, revocar o denegar la concesión de la licencia *expedida* según las disposiciones de este capítulo, previa formulación de cargos, notificación y audiencia a cualquier persona que:

(a) Emplee en su trabajo a personas no autorizadas por la Junta.

(b) Observe una conducta inmoral en el ejercicio de su profesión o haber sido condenado por un tribunal por un delito que implique depravación moral o actuaciones ilegales que impliquen negligencia inexcusable o conducta lesiva a los mejores intereses del público en el desempeño de sus funciones profesionales.

(c) Certifique trabajos de electricidad sin haberlos realizado personalmente o haberlos supervisado.

(d) Haya obtenido una licencia mediante fraude o engaño.

(e) Haya sido declarada incapacitada mentalmente por un tribunal competente ....

(f) Realice instalaciones eléctricas que no cumplan con los requisitos mínimos del Código Eléctrico Nacional vigente, del

Código Eléctrico de Puerto Rico y de los reglamentos promulgados por la compañía privada o pública encargada del suministro de energía eléctrica.

(g) Ejerza la profesión de perito electricista sin estar debidamente colegiado.

(h) No haya tomado los cursos de Educación Continua del Colegio de Peritos Electricistas. (Énfasis suplido.) 20 L.P.R.A. sec. 2715.

■ A tenor con la jurisprudencia antes citada, y según se desprende de las disposiciones transcritas, *la Junta posee amplias facultades para examinar a las personas que soliciten la licencia de perito electricista y autorizar el ejercicio de la profesión a quienes reúnan los requisitos establecidos para ello.* La Ley habilitadora también le concede a la Junta cualquier otra facultad "necesaria para cumplir con las disposiciones de este capítulo". Precisa señalar, además, que la Ley es clara al indicar en su Art. 10 (20 L.P.R.A. sec. 2709) que "[l]a Junta *será la única autorizada para determinar la suficiencia de los exámenes y la capacidad o aptitud de los aspirantes*". Necesariamente, esta facultad implica la de anular algunas o todas las preguntas del examen de reválida si éstas son insuficientes para probar la capacidad de los aspirantes para ejercer esa profesión.

■ Por lo tanto, puede colegirse la facultad de la Junta para invalidar un examen de reválida si, tras una rigurosa investigación, queda demostrado que el examen no resultó adecuado para medir la capacidad de los aspirantes. Tal sería el caso cuando los procesos psicométricos aplicados durante la corrección del examen apunten a la necesidad de anular una o varias de sus preguntas, o exista prueba suficiente que apoye la conclusión de que hubo una irregularidad grave en la confección o administración del examen similar a la ocurrida en el presente caso. Debe tenerse en cuenta el alto interés público que reviste el ejercicio de las profesiones y el primordial interés del Estado en que las personas que sean admitidas a su

ejercicio tengan la capacidad, los conocimientos y las destrezas mínimas requeridas para poder ejercer la profesión en forma responsable. *Santiago v. Trib. Exam. de Médicos*, supra.

En el caso de autos, la Junta tomó la determinación de anular la parte teórica del examen de reválida de 5 de mayo de 2001 luego de realizar una investigación a fondo mediante la cual detectó serias irregularidades en el manejo y la administración del examen. El Estado tomó una serie de pasos antes de arribar a este resultado. Al recibir información que apuntaba hacia la posible comisión de irregularidades serias en el manejo del material del examen previo a su administración, el Departamento de Estado comisionó un estudio a la Corporación Psicométrica cuyos resultados corroboraron las sospechas de irregularidades; alguien había circulado entre los aspirantes la clave del examen. El Departamento de Justicia también efectuó la correspondiente investigación, la cual incluyó un referido al Negociado de Investigaciones Especiales, que culminó con la presentación de cargos criminales contra personas que al momento de la administración del examen eran precisamente miembros de la Junta, uno de los cuales era nada menos que su Presidente. *Ambos imputados admitieron su participación en el esquema fraudulento.*

Tras la conclusión de las investigaciones referidas, y la convicción y destitución de los implicados, la Junta sostuvo una reunión en la que determinó que, ante la gravedad de las irregularidades y los resultados arrojados por el estudio que efectuó la Corporación Psicométrica, no era de ningún modo razonable que se certificaran como válidos los resultados del examen de 5 de mayo de 2001. Las graves irregularidades en la administración del examen de reválida en cuestión imposibilitaban determinar cuáles aspirantes tenían los conocimientos mínimos requeridos para ejercer la profesión de perito electricista en forma responsable. Ante esta conclusión, la única alternativa plausible era

anular el examen teórico y permitir a todos los aspirantes afectados tomarlo de nuevo, libre de costo. Tal fue la determinación que luego se notificó a todos los afectados.

Ante el cuadro fáctico presentado, resolvemos que la Junta tenía la discreción para actuar del modo en que lo hizo. Su determinación fue claramente razonable. Actuar de otra forma hubiese constituido una irresponsabilidad.

Vista la facultad de la Junta para anular un examen de reválida, procede entonces determinar si al recurrido le asistía el derecho, como parte del debido proceso de ley, a un procedimiento administrativo previo a la anulación del examen, para que él tuviera la oportunidad de confrontar los cargos y la prueba en su contra y presentar prueba en su favor. Veamos.

## IV

■ La cláusula de debido proceso de ley, consagrada en nuestra Constitución —Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1— abarca dos dimensiones: la sustantiva y la procesal. *Álvarez v. Arias*, 156 D.P.R. 352 (2002). La vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo sólo ocurra mediante un procedimiento justo y equitativo, que respete la dignidad de los individuos afectados. *Rafael Rosario & Assoc. v. Depto. Familia*, 157 D.P.R. 306 (2002); *U. Ind. Emp. A.E.P. v. A.E.P.*, 146 D.P.R. 611 (1998); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881 (1993).

■ Para activar la protección que ofrece este derecho en su vertiente procesal, *debe demostrarse que el reclamante tiene un interés individual de libertad o propiedad. Almonte et al. v. Brito*, 156 D.P.R. 475 (2002). Luego, es preciso determinar cuál es el procedimiento exigido. *U. Ind. Emp. A.E.P. v. A.E.P.*, supra. Si bien la característica medular es que el proceso debe ser justo, éste no es rígido e

inflexible, sino que se ajusta a las exigencias constitucionales de cada contexto. *P.A.C. v. E.L.A. I*, 150 D.P.R. 359 (2000); *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987). Reiteradamente hemos resuelto que el debido proceso de ley es circunstancial. *In re Dubón Otero*, 154 D.P.R. 192 (2001); *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 D.P.R. 733 (2001); *P.A.C. v. E.L.A. I*, supra; *IM Winner, Inc. v. Mun. de Guayanilla*, 151 D.P.R. 30 (2000); *U. Ind. Emp. A.E.P. v. A.E.P.*, supra.

 Al determinar cuál es el proceso apropiado para privar a algún individuo de un derecho protegido, es preciso considerar los tres criterios siguientes: (1) cuáles son los intereses afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. *Zapata et al. v. Zapata et al.*, 156 D.P.R. 278 (2002).

Al contemplar la situación de autos a la luz de las disposiciones citadas, sólo cabe la conclusión de que al recurrido no le asistía un derecho particular a un procedimiento de adjudicación individual previo a la anulación del examen teórico de 5 de mayo de 2001. En el caso de autos nunca llegó a expedirse una licencia de perito electricista a favor del recurrido, puesto que la Junta paralizó el proceso de expedición de licencias mientras se investigaban las alegadas irregularidades. Esto sucedió antes de que se expidiera una licencia a favor de Marcano Rivera —como se deduce de la carta que le enviara Helsone Ramos— mediante la cual se le indicaba que "desde el día 19 de junio de 2001 algunos altos funcionarios del Departamento de Estado no me permiten emitir las licencias de los que aprobaron [el examen] teórico del 5 de mayo de 2001" y que "no había podido expedirla". De modo que la Junta nunca llegó

a expedir una licencia a favor de Marcano, por lo que éste no tenía aún un interés propietario sobre la licencia en cuestión que pudiera verse afectado por la acción gubernamental. Por esta razón, tampoco le aplica el articulado que dispone el procedimiento a seguir para denegar o revocar licencias ya expedidas.

De celebrarse un procedimiento de adjudicación individual con respecto al caso de Marcano Rivera, éste hubiese sido impertinente y un ejercicio de futilidad. La prueba que pudiese haber aportado el recurrido no habría impedido la anulación del examen de 5 de mayo de 2001, puesto que *no había alegación alguna de que las irregularidades que obligaron a tal determinación hubiesen sido cometidas por Marcano Rivera.* No había mácula alguna contra éste porque él no estaba implicado personalmente. La anulación del examen no se basó en acción alguna de Marcano Rivera, por lo que él no estaba particularmente involucrado en tal anulación. Por otro lado, la anulación del examen teórico no perjudicó en forma desmedida a Marcano Rivera, particularmente puesto que se le dio, al igual que a los demás aspirantes, la oportunidad de tomar el examen de nuevo, libre de costo.

El único interés que Marcano Rivera realmente tenía era que ya había aprobado el examen de reválida en cuestión y ahora se veía precisado a tomarlo de nuevo. Ese interés, valioso como es, sin embargo, tiene que ceder necesariamente frente al preeminente interés público en que la certificación de nuevos profesionales en el campo de peritos electricistas sea adecuada y libre de mácula; sobre todo, que sea ajena a acciones fraudulentas como las que aquí ocurrieron. La carga para Marcano Rivera de tener que tomar el examen de reválida de nuevo es una de esas imposiciones poco fortuitas que las personas tienen que aceptar en situaciones excepcionales como las del caso de autos, cuando imperiosas consideraciones de interés público exigen acciones como la determinación que tomó aquí

la Junta de anular el examen de reválida plagado de irregularidades.

## V

Por los fundamentos antes expuestos, *procede que se revoque la sentencia del antiguo Tribunal del Circuito de Apelaciones de 23 de junio de 2003 y se reinstituya el dictamen de la Junta de 25 de septiembre de 2002.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López disintió con una opinión escrita. El Juez Asociado Señor Rivera Pérez no intervino. La Juez Asociada Señora Rodríguez Rodríguez no interviene.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Estamos, simple y sencillamente, *impedidos* de suscribir y endosar con nuestro voto la opinión emitida en el presente caso por una mayoría de los integrantes de este Tribunal. Ello por entender que se ha realizado una interpretación *completamente errónea* de la legislación y jurisprudencia aplicable, obteniendo, por consiguiente, *un resultado absurdo y sin sentido que lesiona y lastima los derechos del aquí recurrido.* Veamos.

## I

En el presente caso el Departamento de Estado, en su carácter de Director Ejecutivo de Juntas Examinadoras, acudió ante nos alegando que el Tribunal de Apelaciones había incidido al resolver que la Junta Examinadora de Peritos Electricistas (Junta Examinadora) estaba impe-

dida de anular el examen de reválida tomado por el señor Marcano Rivera sin ofrecerle a éste las garantías mínimas del debido proceso de ley.

Al así resolver, el referido foro intermedio entendió que la determinación de la Junta Examinadora carecía "totalmente de conclusiones de hecho y de derecho en abierta violación a las diáfanas disposiciones de la Sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2164".([1]) Apéndice de la Petición de *certiorari*, pág. 74. Asimismo, el tribunal apelativo intermedio expresó que

> [b]rillan por su ausencia las explicaciones sobre la naturaleza de las alegadas irregularidades y el procedimiento mediante el cual se determinó su existencia y magnitud que justificaran que se le niegue la licencia a un aspirante en particular que aprobó los dos exámenes y que cuestionó la decisión de que se le anulara su examen teórico, sin que exista el más mínimo indicio de que él haya incurrido en conducta impropia alguna. Apéndice de la Petición de *certiorari*, pág. 76.

El foro apelativo intermedio cuestionó el hecho de que se haya omitido señalar

> ... cuáles fueron los procedimientos utilizados por la Junta,

---

([1]) A la fecha en que el Tribunal Apelativo emitió su dictamen, la referida sección *disponía*:

"Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.

"La orden deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.

"La orden o resolución advertirá el derecho de solicitar la reconsideración o revisión de la misma, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos.

"La agencia deberá notificar por correo a las partes, y a sus abogados de tenerlos, la orden o resolución a la brevedad posible, y deberá archivar en autos copia de la orden o resolución final y de la constancia de la notificación. Una parte no podrán ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma." 3 L.P.R.A. sec. 2164.

cuáles fueron las disposiciones reglamentarias aplicadas, y cuál fue la prueba oral y documental que la Junta tuvo ante su consideración [al momento de emitir su dictamen. A esos efectos, señaló el referido tribunal que] la parte recurrida ha tendido un velo de misterio, que es incompatible con las nociones más elementales de justicia y debido proceso de ley. Apéndice de la Petición de *certiorari*, pág. 77.

De este modo, el referido foro apelativo concluyó que

... a la luz de todas las circunstancias concurrentes es improcedente la anulación del examen teórico del peticionario sin que se le ofrezcan las garantías mínimas del debido proceso de ley, incluyendo, por supuesto, que se fundamente con conclusiones de hecho y de derecho el dictamen final de la agencia. Apéndice de la Petición de *certiorari*, págs. 77–78.

En el presente caso es de particular importancia lo dispuesto en el Art. 15 de la Ley Núm. 115 de 23 de junio de 1976 (20 L.P.R.A. sec. 2714):

La Junta podrá *denegar* la concesión de una licencia *previa notificación y audiencia* a cualquier persona que:
(a) *Trate de obtener una licencia mediante fraude o engaño.*
(b) No reúna los requisitos para obtener una licencia de acuerdo a lo dispuesto en este capítulo.
(c) Haya sido declarada incapacitada mentalmente por un tribunal competente; se estableciera ante la Junta mediante peritaje médico su incapacidad[, d]isponiéndose, que la licencia podrá otorgarse tan pronto la persona sea declarada nuevamente capacitada y si reúne los demás requisitos dispuestos en este capítulo. (Énfasis suplido.)

Por su parte, el Art. 16 de la Ley Num. 115, ante, 20 L.P.R.A. sec. 2715, dispone, en lo aquí pertinente:

La Junta podrá suspender, revocar o *denegar* la concesión de la *licencia expedida* de acuerdo con este capítulo, *previa formulación de cargos, notificación y audiencia* a cualquier persona que:
(a) Emplee en su trabajo a personas no autorizadas por la Junta.
(b) Observe una conducta inmoral en el ejercicio de su profesión o haber sido condenado por un tribunal por un delito que implique depravación moral o por actuaciones ilegales que

impliquen negligencia inexcusable o conducta lesiva a los mejores intereses del público en el desempeño de sus funciones profesionales.

(c) Certifique trabajos de electricidad sin haberlos realizado personalmente o haberlos supervisado.

(d) Haya obtenido una licencia mediante fraude o engaño.

(e) Haya sido declarada incapacitada mentalmente por un tribunal competente, o se estableciera ante la Junta mediante peritaje médico su incapacidad[, d]isponiéndose, que la licencia podrá otorgarse tan pronto la persona sea declarada nuevamente capacitada y si reúne los demás requisitos dispuestos en este capítulo.

(f) Realice instalaciones eléctricas que no cumplan con los requisitos mínimos del Código Eléctrico Nacional vigente, del Código Eléctrico de Puerto Rico y de los reglamentos promulgados por la compaña privada o pública encargada del suministro de energía eléctrica.

(g) Ejerza la profesión de perito electricista sin estar debidamente colegiado.

(h) No haya tomado los cursos de Educación Continua del Colegio de Peritos Electricistas. (Énfasis suplido.)

Como vemos, ambas disposiciones proveen, entre otras cosas, para aquellos casos en que la Junta Examinadora *deniega* una licencia. El Art. 15 atiende el supuesto en que la denegación ocurre antes de concedida la licencia y el Art. 16 contempla aquellos casos en que ya la licencia ha sido expedida. *Ello, no obstante, ambas disposiciones establecen el requisito de previa notificación y audiencia, como requerimiento para la referida denegación.*

Sin necesidad de dilucidar si en el presente caso la Junta Examinadora expidió o no la licencia de perito electricista a favor de Marcano Rivera, *es evidente que en uno u otro supuesto debió cumplirse con el requisito de previa notificación y audiencia que exige la ley.*([2]) Esto fue precisamente lo que alegó el recurrente al acudir al foro apelativo intermedio y lo que concedió el referido foro al emitir su sentencia.

---

([2]) A diferencia de lo que argumenta la Mayoría, en cuanto a que la anulación del examen respondió a que éste no resultó adecuado para medir la capacidad de los aspirantes, *es claro que en este caso las licencias fueron denegadas ante las sospechas de la existencia de fraude o engaño.*

Hoy una mayoría de este Tribunal, al revocar la determinación del Tribunal de Apelaciones, *errónea e increíblemente* expresa que "[d]e celebrarse un procedimiento de adjudicación individual con respecto al caso de Marcano Rivera, éste hubiese sido impertinente y un ejercicio de futilidad". Opinión mayoritaria, pág. 793. Además, añade y sostiene que

> [l]a prueba que pudiese haber aportado el recurrido no habría impedido la anulación del examen de 5 de mayo de 2001, puesto que no había alegación alguna de que las irregularidades que obligaron a tal determinación hubiesen sido cometidas por Marcano Rivera. No había mácula alguna contra éste porque él no estaba implicado personalmente [y l]a anulación del examen no se basó en acción alguna de Marcano Rivera, por lo que él no estaba particularmente involucrado en tal anulación. (Énfasis suprimido.) Opinión mayoritaria, pág. 793.

Somos del criterio que los fundamentos en los que se apoya la Mayoría para obviar el requisito de ley sobre previa notificación y audiencia de forma alguna justifican la ausencia de garantías mínimas que requiere la ley y a las que hiciera referencia el foro apelativo intermedio. Estas explicaciones, por bonitas que parezcan, no sustituyen los procedimientos legales provistos por el legislador al momento de redactar la Ley Núm. 115, ante.

Por otra parte, resultan *contradictorias* las expresiones de la Mayoría a los efectos de que el examen de Marcano Rivera debe ser anulado cuando se sostiene que no había mácula alguna contra éste. Nos parece *particularmente injusto* que se le imponga a éste la carga de tomar el examen nuevamente, no obstante concluirse que "él no estaba particularmente involucrado en tal anulación". No cabe duda de que si existe la posibilidad de llegar a las determinaciones que —de forma tan contundente— hoy hace la Mayoría, *entonces podría abordarse el asunto de la nulidad de los exámenes caso a caso, sin necesidad de perjudicar a todos los aspirantes por igual.* Si, como aduce la Mayoría,

no había alegación alguna de que las irregularidades hubiesen sido cometidas por Marcano Rivera, *no vemos razón alguna para que éste tenga que sufrir las consecuencias de actos ajenos.*

Como vemos, estamos ante un caso en que se ha realizado una investigación *incompleta e insuficiente* y se le ha *violado* el debido procedimiento de ley al señor Marcano al no seguirse el *requisito estatutario* de formulación de cargos, notificación y audiencia. A nuestro juicio, este caso ameritaba una investigación exhaustiva donde se identificaran a los aspirantes que tuvieron, o pudieron haber tenido, acceso a las preguntas del examen. Cualquier otra conclusión nos parece no sólo injusta, sino, además, inapropiada e improcedente en derecho. *La injusticia no tiene cabida en nuestras decisiones.*