EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Brutal, LLC y otros<br><br>Apelados<br><br>v.<br><br>Colegio de Productores de Espectáculos Públicos y otros<br><br>Apelantes | 2025 TSPR 97<br><br>216 DPR ___ |

Número del Caso: AC-2024-0067

Fecha: 7 de octubre de 2025

Tribunal de Apelaciones:

Panel I

Representante legal de la parte apelante:

Lcdo. Rodrigo Altieri Cartagena

Representantes legales de la parte apelada:

Lcdo. Anthony O. Maceira Zayas
Lcdo. Edgardo Rivera García
Lcda. Yazmet Pérez Guisti
Lcda. Ginnell Torres Adrover
Lcda. Bianca S. Sánchez Rivera

Oficina del Procurador General:

Hon. Omar Andino Figueroa
Procurador General

Lcda. Isimar Ocasio Franco
Procuradora General Auxiliar

Materia: Derecho Constitucional – Inconstitucionalidad del requisito de colegiación compulsoria para los Promotores de Espectáculos Públicos.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Brutal, LLC y otros<br><br>    Apelados<br><br>        v.<br><br>Colegio de Productores de<br>Espectáculos Públicos y otros<br><br>    Apelantes | | AC-2024-0067 |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 7 de octubre de 2025.

Este caso presenta otra instancia en la que este Tribunal viene llamado a evaluar una controversia relacionada a la constitucionalidad del requisito de colegiación compulsoria de una clase profesional en Puerto Rico. En esta ocasión, corresponde que determinemos si la colegiación obligatoria de los promotores de espectáculos públicos sobrepasa el escrutinio constitucional aplicable. Luego de analizar este asunto con el rigor necesario, contestamos la interrogante expuesta en la negativa. En consecuencia, decretamos la inconstitucionalidad del requisito de colegiación impuesto en la Ley Núm. 182-1996, *infra*, y en la Ley Núm. 113-2005, *infra*.

Veamos los hechos del caso.

**I**

El 2 de junio de 2023, Brutal, LLC y el Sr. Manuel Morales Lema (apelados) presentaron una *Demanda y [Solicitud de] Sentencia Declaratoria* en contra del Colegio de Productores de Espectáculos Públicos (Colegio) y el Estado Libre Asociado de Puerto Rico (Estado). Mediante esta, cuestionaron el requisito de colegiación compulsoria que les imponen la Ley Núm. 182-1996, según enmendada, conocida como *Ley del Promotor de Espectáculos Públicos*, 15 LPRA sec. 2001 *et seq.* (Ley Núm. 182-1996) y la Ley Núm. 113-2005, según enmendada, conocida como *Ley del Colegio de Productores de Espectáculos Públicos de Puerto Rico*, 15 LPRA sec. 2011 *et seq.* (Ley Núm. 113-2005), para ejercer la profesión de promotor de espectáculos públicos. Expusieron que lo anterior violenta el derecho fundamental a la libre asociación que tienen bajo el Artículo II, Sección 6 de la Constitución de Puerto Rico. A su vez, añadieron que el requisito de colegiación no se justifica, pues son regulados efectivamente por la Oficina de Servicios al Promotor de Espectáculos Públicos (OSPEP) del Departamento de Hacienda. Por otra parte, argumentaron que el Colegio es incapaz de realizar las funciones para las que fue creado y que utiliza los recursos económicos aportados por sus miembros para adelantar agendas particulares.

Así las cosas, el Estado compareció mediante una *Moción para esbozar postura del Estado*. Expuso que no estaría asumiendo una posición específica en este caso. En

ese sentido, se limitó a exponer el marco jurídico aplicable a la controversia de autos y a expresar que, a su entender, le correspondía al tribunal dilucidar los argumentos de las partes y adjudicar lo que en derecho fuese procedente.

Por su parte, el Colegio presentó su *Contestación a la Demanda*. A grandes rasgos, alegó que el esquema regulatorio vigente respondía al interés apremiante del Gobierno de: salvaguardar que la ciudadanía reciba servicios de la más alta competencia y calidad; proveer seguridad a las transacciones comerciales de compra de boletos; conceder seguridad a los asistentes de eventos producidos por productores colegiados, y brindar protección al bolsillo del consumidor al momento de adquirir entradas a tales espectáculos públicos. Asimismo, adujo que el sistema actual constituye el medio menos oneroso para alcanzar esos fines. Esto pues, afirmó que ni la OSPEP ni el Departamento de Hacienda cuentan con los recursos económicos o el personal para realizar las funciones reglamentarias que actualmente lleva a cabo el Colegio. A su juicio, estas entidades tienen el interés único de maximizar la captación contributiva y no el de velar por los intereses de los promotores o los consumidores. Además, dispuso que no existe una Junta en la OSPEP que pueda desempeñar las funciones que tiene el Colegio. Por otro lado, añadió que la Asamblea Legislativa le impartió un rol activo en la regulación de la profesión al delegarle las tareas de:

colaborar en los procesos disciplinarios, certificar la educación continua de sus miembros y supervisar y auditar el cumplimiento con los requisitos para practicar la profesión.

Posteriormente, los apelados presentaron una *Moción de Sentencia Sumaria*. Solicitaron que se declararan inválidos el Art. 4(i) de la Ley Núm. 182-1996, 5 LPRA sec. 2003 y el Art. 3 de la Ley Núm. 113-2005, 14 LPRA sec. 2012. Alegaron que las disposiciones aludidas son inconstitucionales debido a que la colegiación compulsoria infringe el derecho fundamental de libertad de asociación de estos y no existe un interés apremiante del Estado que justifique tal infracción. En la alternativa, reclamaron que, de existir un interés apremiante, no había justificación que hiciera necesario el menoscabo del derecho de libertad de asociación, incumpliéndose así con el escrutinio aplicable a estos casos.

En respuesta, el Estado instó una *Moción en cumplimiento de orden para esbozar postura del Estado en cuanto a escrito de sentencia sumaria presentado por la parte demandante*. Reiteró que la controversia de autos es una de estricto derecho por lo que el Tribunal de Primera Instancia podía disponer de la misma a la luz de la normativa aplicable.

Por su parte, el Colegio presentó una *Oposición a Moción de Sentencia Sumaria y Contrapetición de Sentencia Sumaria del Colegio de Productores de Espectáculos*

*Públicos*. En lo pertinente, reclamó que la ley que crea el Colegio es constitucional de conformidad con los parámetros enunciados en *Reyes Sorto et al. v. CIAPR*, 212 DPR 109 (2023) (Sentencia) y *Román Negrón y otros v. Col. CPA y otros*, 212 DPR 509 (2023) (Sentencia). Por otro lado, sostuvo que el Colegio es el medio menos oneroso y la única alternativa real, viable y efectiva que tiene el Estado para adelantar su interés apremiante. De igual forma, reclamó que este caso envuelve controversias de hechos materiales e importantes que necesitan descubrimiento de prueba para resolverse. En ese aspecto, expuso que era necesario que se le permitiera la utilización de mecanismos de descubrimiento de prueba para demostrar que la OSPEP y el Departamento de Hacienda son incapaces de realizar las funciones que el Colegio desempeña.

Tras celebrarse una Vista Argumentativa, el Tribunal de Primera Instancia notificó una Sentencia el 15 de diciembre de 2023 mediante la cual declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por los apelados. En consecuencia, decretó la inconstitucionalidad del Art. 4(i) de la Ley Núm. 182-1996, *supra*, y del Art. 3 de la Ley Núm. 113-2005, *supra*. Al así hacerlo, razonó que el requisito de pertenecer al Colegio para practicar la profesión de promotor de espectáculos públicos infringía el derecho constitucional a la libertad de asociación consignado en el Artículo II, Sección 6 de la Constitución de Puerto Rico.

Según el foro primario, en este caso no existen hechos esenciales en controversia. Además, debido a que el propio Estado reconoció en la Vista Argumentativa que no tenía un interés apremiante en este asunto —y así lo evidenciaba, a juicio del tribunal, un análisis de los estatutos pertinentes— entendió que era innecesario evaluar la existencia de un medio menos oneroso que la colegiación compulsoria. No obstante, el tribunal destacó que la OSPEP era el ente gubernamental facultado para regular la profesión de promotores de espectáculos públicos, según lo reflejaba una revisión de la Ley Núm. 182-1996, *supra*, la Ley Núm. 113-2005, *supra*, y el Reglamento de Promotores de Espectáculos Públicos, Reglamento Núm. 5670 de 18 de agosto de 1997 (Reglamento Núm. 5670).

Oportunamente, el Colegio presentó una *Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales*. Por su parte, los apelados se opusieron. Examinados los argumentos, el Tribunal de Primera Instancia emitió una Resolución en la que proveyó No Ha Lugar a la petición del Colegio. Inconforme, este último acudió al Tribunal de Apelaciones por medio de un recurso de apelación.

El 21 de junio de 2024, tras evaluar la comparecencia de todas las partes, el Tribunal de Apelaciones notificó una Sentencia en la que confirmó al Tribunal de Primera Instancia. Expresó que no estaba en disputa que la impugnación de la colegiación compulsoria debía ser

evaluada utilizando un escrutinio estricto. En ese aspecto, indicó que le correspondía al Estado demostrar la existencia de un interés apremiante que hiciera necesaria la colegiación compulsoria y que no existía un medio menos oneroso para adelantar dicho interés. No obstante, puntualizó que, en este caso, el Estado aceptó la inexistencia de tal interés apremiante en las legislaciones impugnadas. Por lo cual, el foro apelativo intermedio coincidió con el Tribunal de Primera Instancia en que esto hacía innecesario examinar el segundo elemento de análisis relacionado a la existencia de un medio menos oneroso y reflejaba la falta de justificación para interferir con el derecho a la libre asociación.

Por otro lado, el Tribunal de Apelaciones señaló que el Art. 6 de la Ley Núm. 113-2005, 15 LPRA sec. 2015, aclara que la OSPEP es el organismo a través del cual los promotores y productores de espectáculos en Puerto Rico rinden cuenta de sus operaciones al Estado y ante el cual las personas o entidades aspirantes en adquirir una licencia, así como los productores no establecidos en la Isla, hacen constar su participación en el negocio de los espectáculos públicos. Igualmente, añadió que conforme al Art. 12 de la Ley Núm. 113-2005, 15 LPRA sec. 2020, el Departamento de Hacienda, a través de la OSPEP, es la agencia a cargo de adoptar cualquier reglamentación necesaria para hacer valer el mandato legislativo, incluyendo, entre otras cosas, el establecimiento de los

requisitos de admisión y suspensión del Colegio. Basado en lo anterior, el foro intermedio concluyó que existía un mecanismo menos oneroso para regular la profesión del promotor de espectáculos públicos sin que fuese necesario tener que infringir el derecho constitucional de los aquí apelados.

Todavía en desacuerdo, el Colegio acudió ante nos mediante un recurso de apelación en el que le imputó al Tribunal de Apelaciones haber incurrido en los errores siguientes:

> 1.  Erró el Tribunal de Apelaciones al confirmar la Sentencia apelada y determinar que no existe un interés apremiante del Estado en la colegiación cuestionada, descartando así los precedentes judiciales aplicables.
>
> 2.  Erró el Tribunal de Apelaciones al confirmar la sentencia apelada y determinar que [la] OSPEP es el ente gubernamental facultado para regular la profesión de productor de espectáculos.

Acogida la apelación presentada, y contando con la comparecencia de las partes, estamos en posición de resolver.

## II

### A. Derecho a la libertad de asociación y la colegiación compulsoria

La Asamblea Legislativa —haciendo uso del poder de razón del Estado ("*ólice power*")— puede prohibir o reglamentar ciertas actividades con el propósito de fomentar o proteger la paz pública, moral, salud y bienestar general de la comunidad. *Pérez Ríos y otros v. ELA y otros*, 213 DPR 144, 152 (2023); *Rodríguez Casillas et*

*al. v. Colegio*, 202 DPR 428, 439-440 (2019); *Domínguez Castro et al. v. ELA I*, 178 DPR 1, 36 (2010). En ese ejercicio, tiene potestad para regular la práctica de profesiones (con excepción de la jurídica) con el fin de proteger la salud y el bienestar público, evitar el fraude y la incompetencia. *Pérez Ríos y otros v. ELA y otros*, *supra*, pág. 152; *Rodríguez Casillas et al. v. Colegio*, *supra*, pág. 440; *Accurate Sols. V. Heritage Environment*, 193 DPR 423, 434 (2015).

En cuanto a la facultad anterior, hemos expresado que el Estado puede establecer requisitos de conocimientos mínimos, capacidad, destreza, entereza moral o cualquier otro que esté racionalmente relacionado con el objetivo de garantizar que se posea la competencia necesaria para practicar una profesión de forma adecuada. *Delucca v. Col. Méd. Cirujanos y otros*, 213 DPR 1, 11 (2023); *Rodríguez Casillas et al. v. Colegio*, *supra*, pág. 428; *Marcano v. Departamento Estado*, 163 DPR 778, 786 (2005). Asimismo, puede prohibir la práctica de una profesión si no se ha obtenido antes una licencia, permiso o certificado de alguna entidad u oficial examinador. *Marcano v. Departamento Estado*, *supra*, pág. 786. No obstante, esta facultad discrecional amplia no puede ser utilizada como medio para violar derechos fundamentales. *Delucca v. Col. Méd. Cirujanos y otros*, *supra*, pág. 11; *Rodríguez Casillas et al. v. Colegio*, *supra*, pág. 440.

Así pues, en el pasado hemos intervenido en situaciones en donde el Estado le ha impuesto un requisito de colegiación compulsoria a ciertas clases profesionales. Esto pues, el requisito de colegiación obligatoria crea una fricción inevitable con el derecho a la libertad de asociación de las personas que son afectadas. *Delucca v. Col. Méd. Cirujanos y otros*, *supra*, pág. 11; *Rodríguez Casillas et al. v. Colegio, supra*, pág. 448.

El derecho a asociarse libremente se encuentra cobijado de manera expresa en la Carta de Derechos de la Constitución de Puerto Rico. Sobre el particular, la misma dispone que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares". Art. II, Sec. 6, Const. PR, LPRA, Tomo 1, ed. 2023, pág. 303. En ese sentido, el derecho a la libertad de asociación es fundamental y está directamente relacionado a la dignidad humana y a la democracia. *Pérez Ríos y otros v. ELA y otros*, *supra*, pág. 145; *Rodríguez Casillas et al. v. Colegio*, supra, pág. 433. Además, hemos reconocido que este incluye necesariamente el derecho de las personas a no asociarse. *Pérez Ríos y otros v. ELA y otros*, *supra*, pág. 145; *Rivera Schatz v. ELA y C. Abo. PR II*, 191 DPR 791, 811-812 (2014). De igual forma, se ha destacado que este derecho es distinto y más amplio al reconocido jurisprudencialmente bajo la Constitución de los Estados Unidos. *Pérez Ríos y otros v. ELA y otros*, *supra*, pág. 145;

*Rivera Schatz v. ELA y C. Abo. PR II*, *supra*, pág. 811. Sin embargo, no es absoluto, lo que implica que puede ceder en determinadas circunstancias, ante intereses de mayor jerarquía o ante situaciones que revistan un alto interés público. *Reyes Martínez et al. v. Colegio et al.*, 2025 TSPR 15, 215 DPR ___ (2025); *P.N.P. v. De Castro Font II*, 172 DPR 883 (2007); *P.A.C. v. ELA I*, 150 DPR 359 (2000); *Democratic Party v. Tribunal Electoral*, 107 DPR 1 (1978).

Por consiguiente, cualquier actuación del Estado que tenga el efecto de incidir sobre el derecho a la libre asociación debe ser justipreciada a la luz de un escrutinio estricto, mediante el cual se demuestre que: (1) existe un interés apremiante que hace necesaria la actuación estatal y (2) que el Estado no tenía a su alcance un medio menos oneroso para lograr el interés articulado. *Pérez Ríos y otros v. ELA y otros*, *supra*, pág. 152; *Rodríguez Casillas et al. v. Colegio*, *supra*, pág. 449. Esto toma en cuenta que, en este ejercicio, la medida impugnada se presume inconstitucional. *Pérez Ríos y otros v. ELA y otros*, *supra*, pág. 152; *San Miguel Lorenzana v. E.L.A.*, 134 DPR 405, 425 (1993). Además, debemos recordar que:

> [n]uestro análisis no requiere que auscultemos si el esquema regulatorio actual es efectivo y viable aun sin la colegiación compulsoria. En cambio, lo que requiere el escrutinio estricto es que evaluemos si existe una medida menos onerosa que la colegiación compulsoria para adelantar el interés apremiante del Estado. Es decir, si según el esquema regulatorio actual la colegiación compulsoria es necesaria para adelantar el interés apremiante del Estado, nada más. (Énfasis

suprimido). *Pérez Ríos y otros v. ELA y otros*, *supra*, pág. 159.

**B. Ley del Promotor de Espectáculos Públicos**

Al aprobarse la Ley Núm. 182-1996, *supra*, la Asamblea Legislativa buscó atender ciertas situaciones desfavorables que enfrentaban las personas que acudían a eventos o espectáculos públicos. En particular, aludió a la problemática que representaba la venta de boletos en exceso de capacidad de los establecimientos, la cancelación de eventos sin proveer una adecuada publicación, la dificultad de conseguir la devolución de dinero en casos de suspensión de espectáculos y la dificultosa e imposible tarea de reclamarle judicialmente a los promotores extranjeros debido a que no contaban con oficinas o agentes residentes en Puerto Rico. Véase Exposición de Motivos de la Ley Núm. 182-1996 (1996 [Parte 1] Leyes de Puerto Rico 1037-1038). Por tanto, mediante esta pieza legislativa, se pretendía "reglamentar la figura del promotor de espectáculos públicos y establecer unos requisitos que deben cumplir las personas que deseen fungir como promotores dentro de la jurisdicción de Puerto Rico". Íd.

Con esto en mente, la Ley Núm. 182-1996, *supra*, pautó unos requisitos básicos para operar como promotor de espectáculos públicos en Puerto Rico. Así pues, mediante este estatuto se buscó regular a las personas naturales o jurídicas —domésticas o extranjeras— que promuevan u organicen la celebración de espectáculos públicos, lo que

incluye: la búsqueda de locales, contratos, y la fase administrativa y publicitaria.[1] Véase, Art. 2(f) de la Ley Núm. 182-1996, 15 LPRA sec. 2001.

Conforme a lo anterior, el Art. 3 de la Ley Núm. 182-1996, 15 LPRA sec. 2002, ordenó la creación de un Registro de Promotores de Espectáculos Públicos (Registro de Promotores) adscrito al Departamento de Hacienda. A su vez, el Art. 4 de la Ley Núm. 182-1996, 15 LPRA sec. 2003, enumera los requisitos para actuar como promotor artístico en Puerto Rico, entre ellos: (a) tener una licencia expedida por el Registro de Promotores; (b) poseer copia de recibo del Departamento de Hacienda por concepto de arbitrios por la refrenda de boletos, recibo de fianza de dicha agencia que garantice el pago de contribución sobre ingreso por el espectáculo, y los boletos refrendados por el ente administrativo, y (c) ser miembro del Colegio o asociarse a un miembro del Colegio. Cabe destacar que el estatuto también delegó en la OSPEP la responsabilidad de supervisar el pago de una fianza de ejecución anual y le concedió la facultad de imponer, mediante la reglamentación adecuada, aquellas multas que entendiese pertinentes.

Por otra parte, el Art. 6 de la Ley Núm. 182-1996, 15 LPRA sec. 2004, contempla la imposición de una pena de diez

---

[1] Cabe destacar que la Ley Núm. 182-1996, según enmendada, conocida como *Ley del Promotor de Espectáculos Públicos*, dispone que esta no es aplicable a espectáculos públicos organizados por agrupaciones o asociaciones cívicas sin fines de lucro. De igual forma, establece que están excluidos de cumplimiento las instituciones religiosas, partidos políticos, los candidatos a posiciones políticas o reelección a posiciones políticas y organizaciones escolares. 15 LPRA sec. 2007.

mil dólares ($10,000) a todo el que actúe como promotor dentro de la jurisdicción de Puerto Rico sin estar debidamente inscrito en el Registro de Promotores y sin obtener una licencia expedida por la OSPEP o, en la alternativa, sin haberse asociado a un miembro del Colegio. De la misma forma, esta disposición establece que cualquier empresario que preste o alquile un local o área para la realización de un evento a una persona que no sea un promotor registrado también será multado por la cantidad de diez mil dólares ($10,000).

A su vez, el Art. 7 de la Ley Núm. 182-1996, *supra*, le concedió al Departamento de Hacienda las facultades siguientes:

> (a) Se faculta al Departamento de Hacienda y al [Registro de Promotores] a crear y establecer los mecanismos y reglas necesarios para implantar este capítulo.
>
> (b) La [OSPEP], adscrita al Negociado de Impuesto al Consumo del Departamento de Hacienda deberá establecer la reglamentación pertinente para atender en un periodo no mayor de sesenta (60) días las recomendaciones de la Junta de Directores del Colegio de Productores de Espectáculos Públicos de Puerto Rico producto de un proceso adjudicativo.
>
> © La [OSPEP], adscrita al Negociado de Impuesto al Consumo del Departamento de Hacienda deberá establecer la reglamentación pertinente para garantizar, en el proceso de reclamación de ajuste de boletos refrendados, la devolución de la cantidad correspondiente al Impuesto de Venta y Uso de aquellos boletos que hayan sido propiamente distribuidos y que, además, estén categorizados como boletos de cortesía en espectáculos públicos en los cuales se cobre derecho de admisión.
>
> (d) La [OSPEP], adscrita al Negociado de Impuesto al Consumo del Departamento de Hacienda deberá

establecer la reglamentación pertinente para permitir el uso de boletos electrónicos (*e-tickets*) y de los dispositivos electrónicos y digitales análogos al uso de estos, para la expedición de boletos en cualquier evento producido acorde con lo dispuesto en esta legislación. 15 LPRA sec. 2006.

Por último, cabe mencionar que al amparo de la Ley Núm. 182-1996, *supra*, se aprobó el Reglamento Núm. 5670, *supra*. Mediante este cuerpo de normas se configuró el Registro de Promotores y, además, se detallaron los requisitos para operar como promotor de espectáculos públicos en Puerto Rico. Véase, Regla 1.3 del Reglamento Núm. 5670, *supra*.

C. **Ley del Colegio de Productores de Espectáculos Públicos de Puerto Rico**

Por otro lado, mediante la Ley Núm. 113-2005, *supra*, la Asamblea Legislativa dispuso la creación y organización del Colegio de Productores de Espectáculos Públicos, especificó sus funciones, facultades y deberes, y estableció la reglamentación y las penalidades que conllevaría incumplir con dicho estatuto. Como razón para promulgar esta medida, se expresó, en lo concerniente, que:

> En el mundo moderno de los medios de comunicación y espectáculos, la protección de los derechos de artistas, intérpretes y productores ha tomado relevancia especial, debido a la facilidad de movimiento del capital y de la internacionalización del mercado. **Sin menoscabo del atractivo o la competitividad de una comunidad como plaza de escenarios, ni de los preceptos constitucionales que garantizan el comercio interestatal, es justo que existan incentivos para fortalecer la posición de los productores y artistas del patio.**

**Es bajo este concepto que se ha aprobado legislación como la Ley Núm. 182, *supra*, para proteger y promover a artistas y productores en Puerto Rico. A[u]n así, los promotores puertorriqueños suelen enfrentar muchos escollos para poder presentar debidamente sus espectáculos en las diferentes tarimas de la Isla. Parte de sus dificultades surgen de la incursión en el negocio de "promotores" o "productores" que no están realmente diestros en la puesta en escena de producciones para el mercado local, o que surgen momentáneamente con el sólo fin de generar una ganancia rápida y abandonar el mercado. El desempeño deficiente de estos elementos en la industria resulta en un desprestigio para la totalidad de la misma, que lleva muchas veces a que los administradores de centros de espectáculo prefieran trabajar con empresas de otras jurisdicciones.**

**Un buen paso para mejorar esta situación sería una reglamentación y creación de cánones de ética para los productores de espectáculos, que asegurara la calidad profesional y la competitividad de los productores del patio. Una colegiación, como sucede en otras áreas de la economía, uniformaría la práctica y crearía un mecanismo de monitoría sobre las prácticas de negocios de los promotores y productores.** […] (Negrillas suplidas). Exposición de Motivos de la Ley Núm. 113-2005, (2005 [Parte 1] Leyes de Puerto Rico 433).[2]

---

[2] En la Exposición de Motivos de la Ley Núm. 205-2016, la cual enmendó la Ley Núm. 113-2005, según enmendada, conocida como *Ley del Colegio de Productores de Espectáculos Públicos de Puerto Rico*, 15 LPRA sec. 2011 *et seq.* (Ley Núm. 113-2005), la Asamblea Legislativa hizo constar que:

> **"perseguía fortalecer la credibilidad y el *standing* de la industria de producción de espectáculos mediante la creación de una colegiación compulsoria.** A su vez, el estatuto reconocía la importancia de proteger a los artistas que prestaban sus servicios mediante la presentación en un escenario en Puerto Rico y a los consumidores que pagaban por estos espectáculos. En sentido amplio, la referida legislación perseguía ser un mecanismo para proteger y distanciar a los productores de espectáculos profesionales de aquellas personas que, aún sin la experiencia necesaria, utilizaban la profesión como un canal para hacer dinero rápido y de aquellas personas inescrupulosas que ejecutaban engaños, fraudes y timos al producir un evento y luego no rendían cuenta por los mismos. […]". (Negrillas suplidas). Exposición de Motivos de la Ley Núm. 205-2016 (2016 [Parte 3] Leyes de Puerto Rico 2462).

De conformidad con la Ley Núm. 113-2005, *supra*, podrán fungir como productores de espectáculos aquellos productores establecidos en Puerto Rico, que estén colegiados y que cumplan anualmente con un mínimo de seis (6) horas crédito de cursos, seminarios o talleres de crecimiento profesional y desarrollo educativo, según lo establece esta ley y los reglamentos adoptados a su amparo.[3] 15 LPRA sec. 2012. De igual forma, podrán fungir como productores de espectáculos aquellos que no estén establecidos en Puerto Rico pero que se asocien con productores debidamente colegiados o, en el caso de productores o promotores no establecidos en Puerto Rico, pero que estén establecidos en algún otro territorio o estado de los Estados Unidos, luego de que estos se asocien a un productor colegiado u obtengan una licencia de la OSPEP y se hagan miembros del Colegio. Íd.

Como requisito previo a que se le confiera la colegiación formal a un productor de espectáculo público,

---

[3] La Ley Núm. 113-2005, *supra*, define un "productor establecido en Puerto Rico" como aquella persona que:

> "haya producido espectáculos públicos en Puerto Rico y que cobra admisión, de manera individual o asociado con otro productor, que haya obtenido una licencia regular de la [OSPEP] para presentar espectáculos en la Isla, de conformidad con lo dispuesto en este capítulo. Se entenderá que en este grupo estará comprendida toda aquella persona natural o jurídica que haya obtenido la licencia de la [OSPEP] previo a la aprobación de esta ley y, en lo sucesivo, estará comprendido todo aquel productor que cumpla con las disposiciones legales y reglamentarias derivadas de lo dispuesto en este capítulo y que, en virtud de ello, obtenga la membresía correspondiente del Colegio. Se entenderá que en este grupo también están comprendidos los productores y/o promotores de espectáculos realizados bajo las secs. 871 *et seq.* del Título 3, conocidas como la 'Ley de Nuestra Música Autóctona Puertorriqueña'". 15 LPRA sec. 2011.

este debe cumplir con: (a) acreditar al Colegio haber obtenido un grado mínimo de cuarto año de escuela superior; (b) solicitar membresía al Colegio, la cual tendrá vigencia de dos (2) años; (c) producir un (1) espectáculo público durante el periodo de vigencia de la membresía, y (d) cumplir con seis (6) horas crédito de cursos ofrecidos por el Colegio, durante el periodo de vigencia de la membresía. Íd. No obstante, la Ley Núm. 113-2005, *supra*, dispone que un productor no tendrá que cumplir con los requisitos antes mencionados, si acredita al Colegio que ha cumplido con veintiún (21) horas crédito en cursos relacionados con producción de eventos de una universidad acreditada por el Consejo de Educación de Puerto Rico. Íd.

Entre las funciones y deberes que tiene el Colegio, el Art. 4 de la Ley Núm. 113-2005, *supra*, contempla los siguientes:

> […]
>
> (g) Adoptar unos Cánones de Ética Profesional, que regirán tanto la conducta de sus miembros como los procedimientos para recibir, investigar y adjudicar las querellas que se formulen con respecto a la práctica y conducta de los colegiados; y de forma tal que [la] OSPEP imponga las sanciones aplicables.
>
> […]
>
> (u) Promover el desarrollo profesional de sus miembros. Establecer una oferta de crecimiento profesional y desarrollo educativo para todos sus miembros. El Colegio de Productores de Espectáculos Públicos desarrollará cursos, talleres, seminarios y documentos informativos dirigidos a fortalecer la preparación profesional de sus miembros. Esta obligación no será taxativa a cuestiones relativas a la producción de espectáculos públicos, por lo que podrán añadirse

como parte de la oferta educativa, cuestiones administrativas y de manejo corporativo, orientaciones relacionadas a aspectos legales, publicidad, entre otros. Las delimitaciones procesales para asegurar la implementación de lo aquí dispuesto, incluyendo la duración y regularidad de los ofrecimientos serán determinadas mediante la votación de la mayoría de miembros presentes en Asamblea Anual debidamente constituida, posteriormente, plasmadas en reglamento.

(v) Propender, fomentar y procurar que todo miembro colegiado cumpla con un mínimo de seis horas (6) horas crédito de cursos, seminarios, o talleres de crecimiento profesional y desarrollo educativo. Velar por el fiel cumplimento de las horas de crecimiento profesional y desarrollo educativo de sus miembros e imponer sanciones por su incumplimiento. Certificar el cumplimiento o incumplimiento de sus miembros con las horas de crecimiento profesional y desarrollo educativo. Así como, desarrollar el reglamento que atienda esta función y poder.

(w) Habilitar, reglamentar y realizar todos los actos necesarios para establecer procedimientos dirigidos a los estudiantes que se encuentren cursando estudios conducentes a certificación, grado asociado, bachillerato, maestría o grado doctoral en currículos académicos de cualquier rama de las ciencias de la comunicación, de producción de eventos, de mercadeo de eventos o de cualquier programa curricular análogo, en cualquier universidad o colegio universitario que esté debidamente acreditado por el Estado y aún no posean licencia para producción de espectáculos puedan formar parte del Colegio de Productores de Espectáculos Públicos de Puerto Rico como miembros colegiados.

(x) Desarrollar una guía básica para orientar a los nuevos miembros que ingresan respecto a las obligaciones éticas y profesionales de cada miembro; los deberes, obligaciones, servicios, procedimientos y herramientas del Colegio de Productores de Espectáculos Públicos; las obligaciones y derechos del miembro colegiado ante la Oficina de Servicios al Promotor de Espectáculos Públicos; y la legislación y reglamentación aplicable y vigente.

[…] 15 LPRA sec. 2013.

Por otro lado, el Art. 6 de la Ley Núm. 113-2005, 15 LPRA sec. 2015, dispone que aquellas personas aspirantes a tener una licencia de productor de espectáculos públicos deberán solicitar admisión al Colegio y ser admitidos previo a obtener dicha licencia. Además, esta disposición consigna que la OSPEP continuará siendo el organismo, mediante el cual los promotores y productores de espectáculos en Puerto Rico deben refrendar sus inventarios de boletos y rendir cuenta de sus operaciones al Gobierno. De igual forma, expresa que ese será el organismo ante el cual las personas o entidades aspirantes en adquirir una licencia y colegiación, así como los productores no establecidos en Puerto Rico, harán constar su participación en el negocio de los espectáculos públicos.

Con respecto a los productores no establecidos en Puerto Rico, el Art. 6 de la Ley Núm. 113-2005, *supra*, establece que estos continuarán inscribiéndose ante la OSPEP y producirán espectáculos públicos en la Isla a través de la asociación con un miembro del Colegio u obteniendo la membresía del Colegio y la licencia emitida por la OSPEP.

Conforme a la ley, la cuota de membresía del Colegio es una obligación anual de cada miembro productor colegiado. 15 LPRA sec. 2016. La falta de pago de la cuota anual conlleva la suspensión como miembro del Colegio y la suspensión de la licencia de la OSPEP para practicar la producción de espectáculos públicos. Íd. En adición a lo

anterior, el procedimiento para la suspensión de la membresía del Colegio será establecido por Reglamento en la medida que la OSPEP delegue esta función. Íd. Sin embargo, el procedimiento para la suspensión de la licencia será establecido por la OSPEP. Íd. Las suspensiones temporeras o revocaciones permanentes que sean finales y firmes, decretadas contra un productor por el Colegio o por la OSPEP por violación a los Cánones de Ética establecidos por Reglamento, podrán conllevar también la suspensión del productor como miembro del Colegio por todo el tiempo que durare la suspensión o revocación decretada por el Colegio, así como una sanción de amonestación. Íd.

Por su parte, el Art. 10 de la Ley Núm. 113-2005, 15 LPRA sec. 2019, dispone que toda persona que ejerza la profesión de productor de espectáculos públicos en Puerto Rico, sin ser miembro del Colegio o que, durante la suspensión del pago de cuota o luego de que su licencia se haya revocado, ejerza como tal, incurrirá en delito menos grave y convicta que fuera, se le impondrá una multa no menor de quinientos dólares ($500) ni mayor de mil dólares ($1,000) por ocurrencia. Asimismo, todo productor no establecido en Puerto Rico, que sirva de promotor o productor de algún espectáculo público en la Isla, sin estar debidamente asociado a un productor colegiado, o que estando establecido en un territorio o estado de los Estados Unidos no se haya asociado a un productor colegiado, o en ausencia de dicha asociación no haya

obtenido la membresía del Colegio ni la licencia necesaria, estará sujeto, además, a una multa administrativa no mayor de diez mil dólares ($10,000), a ser impuesta por la OSPEP, y a la suspensión o revocación de cualquier licencia concedida. Esta sanción también podrá ser impuesta a toda administración de facilidades pertenecientes al Gobierno o al administrador de la facilidad en su carácter individual que permita la celebración de un espectáculo público a un productor no colegiado o que no se haya asociado a un productor colegiado o que no haya obtenido la licencia expedida por el Colegio.

Por último, el Art. 12 de la Ley Núm. 113-2005, *supra*, le concede al Departamento de Hacienda la facultad reglamentaria siguiente:

> el Departamento de Hacienda, por conducto de la [OSPEP] o la entidad que corresponda, deberá adoptar los mecanismos, las reglas, la nueva reglamentación o modificar la existente, incluyendo, pero sin limitarse a la contemplada bajo el Reglamento Núm. 5670[, *supra*], para hacer valer el mandato de este capítulo, e incluyendo pero sin limitarse a establecer mediante reglamento los requisitos para la admisión y suspensión del Colegio de Promotores de Espectáculos Públicos de Puerto Rico y el correspondiente procedimiento así como la delegación a manos del Colegio de aquellos aspectos de dicho procedimiento de admisión y suspensión de la membresía que sean procedentes en Derecho. […] Una vez el Colegio formule un código de ética, el Departamento de Hacienda deberá incluir [e]ste en el correspondiente reglamento adoptado por [la] OSPEP. 15 LPRA sec. 2020.

**III**

Mediante el recurso de autos, el Colegio argumentó que los foros inferiores erraron al adjudicar que (1) el Estado no tenía un interés apremiante para sustentar las disposiciones legislativas impugnadas y (2) que, de haberlo, la OSPEP era el ente facultado para regular a los promotores de espectáculos públicos, por lo que existía un medio menos oneroso que la colegiación compulsoria.

Por otro lado, los apelados sostienen que la colegiación obligatoria violenta el derecho fundamental a la libertad de asociación, en su vertiente del derecho a no asociarse. A su vez, consideran que esta restricción no responde a un interés apremiante, pues así lo reconoció el propio Estado durante el presente procedimiento. Según exponen, dicha admisión es suficiente para resolver la controversia. Sin embargo, alegan que, de entenderse lo contrario, se debe concluir que la colegiación compulsoria no es el medio menos oneroso para adelantar los intereses del Gobierno, pues la OSPEP es quien posee facultad para regular la profesión.

Por su parte, el Estado aduce que, a diferencia de otras legislaciones que reglamentan ciertas profesiones, en este caso la Asamblea Legislativa no consignó un interés estatal apremiante que justificara la interferencia del Gobierno con el derecho a la libertad de asociación de los promotores de espectáculos públicos. Por ende, arguye que los foros inferiores actuaron correctamente al no analizar

el segundo elemento del escrutinio estricto pues, según considera, ello es innecesario.

En primer lugar, procede que determinemos si la acción estatal en controversia, entiéndase, la colegiación compulsoria, pretende salvaguardar algún interés apremiante del Gobierno. Al enfrentarse a esta interrogante, tanto los tribunales inferiores como el propio Estado concluyeron que no. Entendemos que tienen razón.

Contrario a lo alegado por el Colegio, la Exposición de Motivos de la Ley Núm. 113-2005, *supra*, y sus disposiciones no nos permiten concluir que la colegiación compulsoria persigue preservar un interés estatal de alta jerarquía. Tampoco surge que este requisito se implementó con el fin de regular la profesión de los promotores y productores de espectáculos para proteger la salud y el bienestar público o evitar el fraude y la incompetencia. Por el contrario, una revisión del estatuto refleja que su objetivo es proteger y fortalecer "la posición de los productores y artistas del patio" frente a una industria cada vez más competitiva. Véase, Exposición de Motivos de la Ley Núm. 113-2005, *supra*. Esto, ante la problemática que representaban los productores fugaces o poco conocedores del mercado local que estaban desprestigiando con sus actos al sector y afectando la percepción de los centros de espectáculos, provocando que estos últimos prefirieran trabajar con empresas de otras jurisdicciones. Íd. En ese aspecto, la Ley Núm. 113-2005, *supra*, intentó fortalecer la

credibilidad y el "*standing*" de la industria de la producción de espectáculos mediante la creación de un mecanismo que beneficiara a los productores y promotores locales. Véase, Exposición de Motivos de la Ley Núm. 205-2016 *supra*.

Así pues, podemos ver que la colegiación compulsoria no se vislumbró como una medida de regulación profesional, sino como una herramienta para lograr que el colectivo de profesionales pertenecientes al Colegio tuviese el control de la industria de la producción y promoción de eventos públicos en Puerto Rico. El esquema diseñado pretendió asegurar que solo los productores y promotores colegiados ⸻o aquellos que se asociaran a productores y promotores que lo estuviesen⸻ pudieran operar este negocio de forma lucrativa en la Isla. Por tanto, lejos de preservar los altos estándares profesionales en *pro* del interés público, el esquema de colegiación obligatoria estatuido tuvo la intención de mantener un mercado cerrado.

Este tipo de régimen no guarda vínculos con los intereses que busca proteger tradicionalmente el Estado al regular las distintas profesiones u oficios. El saldo legislativo revela una colegiación compulsoria que, en su fondo, reglamenta una actividad comercial y no se concibe como un mecanismo para prevenir daños al Pueblo o proteger asuntos esenciales como la vida, la salud o la seguridad pública. Es decir, la regulación de los productores y

promotores mediante la colegiación obligatoria persigue intereses económicos no vinculados a la reglamentación de la profesión. El efecto práctico es la restricción del derecho constitucional a la no asociación con el fin de que un grupo mantenga el dominio de una actividad comercial y no para proteger a los ciudadanos de riesgos reales y sustanciales. Por lo cual, la colegiación impugnada no responde a un interés apremiante, sino a una estrategia de control gremial que no supera el escrutinio constitucional al que está sujeta.

De igual forma, los beneficios que la Ley Núm. 113-2005, *supra*, pretende promover a través de la colegiación compulsoria (entiéndase, la sujeción de los profesionales colegiados a unos lineamientos éticos y a cumplir con ciertos requisitos de educación continua) pueden ser alcanzados efectivamente sin que los productores y promotores tengan que pertenecer obligatoriamente a una agrupación. Esto pues, aunque el Colegio desarrolla unos Cánones de Ética Profesional, el Departamento de Hacienda es el ente encargado de recoger los mismos en su reglamentación y de imponer ——a través de la OSPEP—— las sanciones procedentes. Véase, Arts. 4 y 12 de la Ley Núm. 113-2005, *supra*. Además, un esquema de colegiación voluntaria, en nada impediría que el Colegio siga desempeñando su rol de procurar la educación continua de sus miembros.

Ante la falta de articulación de un interés estatal apremiante, la presunción de inconstitucionalidad de la colegiación compulsoria estatuida en la Ley Núm. 182-1996, *supra*, y en la Ley Núm. 113-2005, *supra*, se mantiene. Por lo cual, resulta innecesario que examinemos el segundo criterio del escrutinio estricto constitucional relacionado a la existencia de un medio menos oneroso.

Estando ante una controversia de estricto derecho, la cual no requiere del desfile de prueba ni la celebración de un juicio en su fondo, los foros inferiores podían disponer sumariamente de esta. En casos como el presente, los tribunales solo venimos llamados a emplear adecuadamente la normativa de rigor para determinar si la colegiación compulsoria supera el estándar constitucional aplicable. Al cumplirse los requisitos de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, y habiéndose resuelto la controversia correctamente en derecho, las decisiones recurridas deben confirmarse.

## IV

Por los fundamentos antes expuestos, se decreta la inconstitucionalidad de la colegiación compulsoria establecida en la Ley Núm. 182-1996, *supra*, y en la Ley Núm. 113-2005, *supra*, y se confirman los dictámenes de los foros inferiores.

Se dictará Sentencia en conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Brutal, LLC y otros<br><br>    Apelados<br><br>        v.<br><br>Colegio de Productores de<br>Espectáculos Públicos y otros<br><br>    Apelantes | AC-2024-0067 | |

SENTENCIA

En San Juan, Puerto Rico, a 7 de octubre de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se decreta la inconstitucionalidad de la colegiación compulsoria establecida en la Ley Núm. 182-1996, *supra*, y en la Ley Núm. 113-2005, *supra*, y se confirman los dictámenes de los foros inferiores.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emite la siguiente expresión concurrente:

"He reconocido que la regulación de las diversas profesiones es un asunto que no puede tratarse homogéneamente. En el examen de la colegiación de los técnicos y mecánicos automotrices avalé invalidar el esquema de colegiación compulsoria, pero destaqué que aquel caso no necesariamente correspondía a la realidad de otras profesiones restantes en Puerto Rico. Hoy nuevamente nos encontramos ante una de esas profesiones que el interés público, la seguridad o la protección de la ciudadanía no hacen necesaria la colegiación compulsoria. Adviértase que el entonces Juez del Tribunal de Primera Instancia a cargo de este caso y hoy compañero de estrado, el Honorable Juez Asociado señor Candelario López, dictaminó en su *Sentencia* de 15 de diciembre de 2023 que: "el Colegio de Técnicos y Mecánicos Automotrices y el Colegio de Productores de Espectáculos ostentan funciones similares, las cuales no requieren de una colegiación compulsoria para el cumplimiento".

Ciertamente, a diferencia de otras profesiones, estas actividades comerciales están altamente reguladas por una multiplicidad de agencias administrativas fiscalizadoras con recursos, tales como el Departamento de Asuntos del Consumidor y el Departamento de Hacienda, entre otras. Reitero la importancia de realizar un análisis contextual en los casos de impugnaciones de las colegiaciones compulsorias, ya que el Derecho no suele ser siempre blanco o negro. Este caso no es la excepción, ya que esta controversia se tiñe de matices tan diversos como las particularidades de las distintas profesiones y su impacto en la sociedad. Es por ello que enfatizo que nuestra función es identificar la variante correcta. Con ello en mente, respetuosamente concurro."

El Juez Asociado señor Colón Pérez disiente del resultado al que hoy se llega y hace constar las siguientes expresiones:

"Según hemos reiterado consistentemente en el pasado, somos de la postura que el requisito de colegiación compulsoria, -- que se exige en nuestro País como condición para ejercer determinadas profesiones --, **es una medida de protección social que puede coexistir con el derecho constitucional a la libertad de asociación.** Sobre el particular, véase nuestras Expresiones Disidentes en *Liselie Reyes Martínez, et al. v. CCDPR, et al.*, 2025 TSPR 15, 13-14 y en *Carlos Javier Ramos et al., v. Estado Libre Asociado de Puerto Rico, et al.*, 214 DPR 30, 51-53 (2024); nuestra Opinión de Conformidad en *Reyes Sorto et al. v. CIAPR*, 212 DPR 109, 142-155 (2023); y nuestra Opinión Disidente en *Delucca v. Col. Méd.Cirujanos y otros*, 213 DPR 1, 70-79 (2023). **Hoy, y en el contexto de la promoción de espectáculos públicos, insistimos en dicha postura.**

Y es que, un estudio desapasionado de los estatutos que debíamos evaluar para disponer de la controversia ante nos, -- entiéndase, la Ley Núm. 113-2005, mejor conocida como *Ley del Colegio de Productores de Espectáculos Públicos de Puerto Rico*, 15 LPRA sec. 2011 *et seq.* (en adelante, "Ley Núm. 113-2005"), y la Ley Núm. 182 de 3 de septiembre de 1996, mejor conocida como *Ley del Promotor de Espectáculos Públicos*, 15 LPRA sec. 2001 *et seq.* (en adelante, "Ley Núm. 182-1996") --, debió habernos llevado a concluir que las prerrogativas que el Colegio de

Productores de Espectáculos Públicos de Puerto Rico ejerce constituyen el medio menos oneroso para adelantar el interés apremiante del Estado de regular dicha profesión.

Debemos comenzar por señalar aquí que el ejercicio de la producción de espectáculos públicos repercute tanto en el Estado, como en los consumidores y artistas que participan de éstos. Exposición de Motivos, Ley Núm. 182-1996, *supra*. Corresponde a las promotoras y los promotores la realización de los trámites administrativos y publicitarios inherentes a este tipo de eventos. *Íd*. En el desempeño de sus funciones, éstas y éstos se encargan, entre otras gestiones, de: (1) identificar y asegurar el espacio o sede donde habrá de celebrarse el evento; (2) contratar al personal técnico responsable de los sistemas de luces y sonidos; y (3) procurar el auspicio de entidades comerciales para efectos de promoción. *Íd*. Asimismo, recae sobre las promotoras y los promotores la responsabilidad de manejar los procesos relacionados con la impresión, distribución y venta de boletos. *Íd*.

En aras de fortalecer a dicho gremio, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 113-2005, *supra*, en virtud de la cual se creó el Colegio de Productores de Espectáculos Públicos. Exposición de Motivos, Ley Núm. 113-2005, *supra*. En esa dirección, el referido estatuto facultó a esta entidad con funciones esenciales, entre las cuales se destacan las siguientes:

> (g) **Adoptar unos Cánones de [É]tica Profesional, que regirán tanto la conducta de sus miembros como los procedimientos para recibir, investigar y adjudicar las querellas que se formulen con respecto a la práctica y conducta de los colegiados; y de forma tal que [la Oficina de Servicios al Promotor de Espectáculos Públicos,] OSPEP [,] imponga las sanciones aplicables.**
>
> (h) Proteger a sus miembros y disponer la creación de sistemas de seguros; de fondos especiales y otros servicios de protección voluntaria a sus integrantes. […]

(j) Para instrumentar los propósitos de esta Ley, el Colegio queda autorizado a crear la "Fundación de Productores de Espectáculos Públicos de Puerto Rico", la cual funcionará como una corporación de fines no pecuniarios debidamente registrada en el Departamento de Estado. No obstante, la Fundación proveerá, entre otros, programas de servicios a la comunidad, ya bien educativos, deportivos, artísticos, culturales y cualesquiera otros de interés social y profesional. […]

(u) **Promover el desarrollo profesional de sus miembros.** Establecer una oferta de crecimiento profesional y desarrollo educativo para todos sus miembros. El Colegio de Productores de Espectáculos Públicos desarrollará cursos, talleres, seminarios y documentos informativos dirigidos a fortalecer la preparación profesional de sus miembros. Esta obligación no será taxativa a cuestiones relativas a la producción de espectáculos públicos, por lo que podrán añadirse como parte de la oferta educativa, cuestiones administrativas y de manejo corporativo, orientaciones relacionadas a aspectos legales, publicidad, entre otros. […]

(v) **Propender, fomentar y procurar que todo miembro colegiado cumpla con un mínimo de seis horas (6) horas crédito de cursos, seminarios, o talleres de crecimiento profesional y desarrollo educativo.** Velar por el fiel cumplimento de las horas de crecimiento profesional y desarrollo educativo de sus miembros e imponer sanciones por su incumplimiento. Certificar el cumplimiento o incumplimiento de sus miembros con las horas de crecimiento profesional y desarrollo educativo. Así como, desarrollar el reglamento que atienda esta función y poder. […]

(x) **Desarrollar una guía básica para orientar a los nuevos miembros que ingresan respecto a las obligaciones éticas y profesionales de cada miembro;** los deberes, obligaciones, servicios, procedimientos y herramientas del

> Colegio de Productores de Espectáculos Públicos; las obligaciones y derechos del miembro colegiado ante la Oficina de Servicios al Promotor de Espectáculos Públicos; y la legislación y reglamentación aplicable y vigente. (Énfasis suplido). Art. 4 de la Ley Núm. 113-2005, 15 LPRA sec. 2013.

> Como se puede apreciar, el Colegio de Productores de Espectáculos Públicos es el ente encargado de uniformar el ejercicio de esta compleja y lucrativa profesión, y de crear mecanismos de monitoreo para la misma. En vista de estas importantísimas funciones, somos del criterio que el derecho de sus miembros a no asociarse debe ceder ante los intereses que adelanta la colegiación compulsoria.

> Debemos recordar, pues, que los colegios profesionales "se aseguran de que quienes forman parte de su gremio mantengan sus conocimientos actualizados y cumplan con los requerimientos éticos que les rigen, protegiendo así a la ciudadanía de ser víctimas de prácticas ilegales o un desempeño incompetente por parte de los profesionales a los que estas instituciones regulan". Opinión Disidente del Juez Asociado Colon Pérez en *Rodríguez Casillas et al. v. Colegio,* 202 DPR 428, 473-474 (2019). **Ello no es la excepción en este caso.**

> Así las cosas, no podemos estar de acuerdo con el resultado al que arriba una mayoría de este Tribunal en el presente caso, en cuanto a decretar la inconstitucionalidad de la colegiación compulsoria de los productores de espectáculos públicos de Puerto Rico.

> De conformidad con todo lo expuesto, muy respetuosamente disentimos del curso de acción seguido por una mayoría de mis compañeras y compañeros de estrado el día de hoy.".

La Jueza Presidenta Oronoz Rodríguez disiente con Opinión escrita. El Juez Asociado señor Candelario López no interviene.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Brutal, LLC y otros

    Apelados

      v.                 AC-2024-0067

Colegio de Productores de Espectáculos Públicos y otros

    Apelantes

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión disidente

En San Juan, Puerto Rico a 7 de octubre de 2025.

Hoy, nuevamente, una mayoría de este Tribunal emplea un análisis erróneo y autómata al decretar la inconstitucionalidad de dos estatutos que condicionan el licenciamiento de la profesión de los promotores de espectáculos públicos a la obtención de una membresía en un colegio profesional. Esta determinación —al igual que todos los pronunciamientos previos que dejan sin efecto la colegiación compulsoria— atenta contra las piezas legislativas que tienen el propósito de garantizar el bienestar público y adelantar la protección social mediante la reglamentación de las profesiones. Además, debido a que este caso se resolvió por la vía sumaria y, como consecuencia, no se efectuó

un descubrimiento de prueba, estimo que este Tribunal carece de los elementos necesarios para ejercer su tarea adjudicativa.

Por no tener presentes los elementos fácticos necesarios para determinar las funciones que llevaba a cabo el Colegio de Productores de Espectáculos Públicos (Colegio) y la Oficina de Servicios al Promotor de Espectáculos Públicos (OSPEP), no logramos constatar de manera definitiva si esta última era una alternativa real, viable y efectiva para cumplir con el interés apremiante que el Estado desea proteger. Por ende, procedía revocar los foros inferiores y devolver el caso al Tribunal de Primera Instancia para llevar a cabo el descubrimiento de prueba correspondiente.

## I

El 2 de junio de 2023 Brutal, LLC y el Sr. Manuel Morales Lema (en conjunto, Brutal) presentaron una *Demanda y sentencia declaratoria* contra el Colegio y el Estado Libre Asociado de Puerto Rico (Estado) en la que impugnaron la constitucionalidad de la obligatoriedad de ser miembro del Colegio, según estatuyen la Ley Núm. 113-2005, según enmendada, también conocida como la *Ley del Colegio de Productores de Espectáculos Públicos de Puerto Rico*, 15 LPRA sec. 2011 *et seq.*, y la Ley Núm. 182-1996, también conocida como la *Ley del Promotor de Espectáculos Públicos*, 15 LPRA sec. 2001 *et seq.* Estos alegaron que el requisito que obliga a los promotores de espectáculos a colegiarse para obtener su licencia y practicar su profesión violentaba su derecho constitucional a la libre asociación al amparo de la Sección

6 del Artículo II de la Constitución de Puerto Rico. Const. PR. II Sec. 6 LPRA Tomo 1. Adujeron que el Colegio no atiende un interés apremiante del Estado, puesto que la profesión se regula efectivamente por el Departamento de Hacienda y la OSPEP, según estableció la Ley Núm. 182-1996. Por lo anterior, solicitaron que se decretara la inconstitucionalidad de la colegiación compulsoria que exponen la Ley Núm. 182-1996 y la Ley Núm. 113-2005.

Posteriormente, el Estado presentó una *Moción para esbozar postura del Estado*, en la que expuso que no intervendrá en el caso con una posición particular en cuanto a la constitucionalidad de la colegiación compulsoria. Se limitó a exponer el derecho aplicable sobre la libertad de asociación, la colegiación compulsoria y la reglamentación de las profesiones. Arguyó que les correspondía a los tribunales determinar lo que proceda en derecho a la luz de los intereses específicos que buscaban salvaguardar respecto a la profesión de productor de espectáculos públicos.

Por su parte, el Colegio presentó su *Contestación a la demanda* y expuso que el esquema regulatorio profesional vigente constituye el mecanismo menos oneroso para reglamentar la profesión e industria de los promotores de espectáculos públicos. Delineó que la legislación aplicable le confirió al Colegio un rol definitivo en la regulación de la profesión, el cual incluye la colaboración en el proceso disciplinario, la certificación de educación continua, y la supervisión y auditoría del cumplimiento con los requisitos necesarios para practicar la referida profesión. Por otro

lado, afirmó que **la OSPEP: (1) carece de recursos y personal para reglamentar la profesión adecuadamente, y (2) no vela por la reglamentación ni por los intereses de la profesión, dado que su único interés es alcanzar la mayor captación contributiva posible de los promotores.**

En respuesta, Brutal presentó una *Moción de sentencia sumaria* en la que solicitó que se declararan inconstitucionales el Artículo 4(i) de la Ley Núm. 182-1996, 15 LPRA sec. 2001 nota, y el Artículo 3 de la Ley Núm. 113-2005, 15 LPRA sec. 2011 nota. Reiteró que la colegiación compulsoria infringía el derecho a la libre asociación y que no existía un interés apremiante del Estado que justificara esta intromisión. En el caso de que se determinara que persiste un interés apremiante, solicitó que se invalidaran los referidos estatutos, puesto que el Estado no ha demostrado la inexistencia de un medio menos oneroso para adelantar tal exigencia.

Luego de varios trámites procesales, el Estado presentó una moción en cumplimiento de orden en la que reafirmó que la controversia es una de estricto derecho que corresponde resolver según el ordenamiento vigente. Sin embargo, el Colegio se opuso al petitorio de Brutal, negó que la controversia de autos fuera un asunto de estricto derecho y solicitó que se denegara la solicitud de sentencia sumaria. Expresó que el presente caso envuelve controversias de hechos materiales e importantes que requieren dirimirse. Por esto, **arguyó que procede celebrar un descubrimiento de prueba** para determinar de manera contundente que la OSPEP y el

Departamento de Hacienda no son una alternativa menos onerosa para realizar las funciones del Colegio. Recalcó que el Colegio es la única alternativa real, viable y efectiva para adelantar el interés apremiante del Estado de reglamentar la profesión de productor de espectáculos públicos.

Celebrada una vista argumentativa, el 14 de diciembre de 2023 el Tribunal de Primera Instancia emitió una *Sentencia* en la que declaró ha lugar la *Moción de sentencia sumaria* que presentó Brutal. En consecuencia, decretó la inconstitucionalidad del Artículo 4(i) de la Ley Núm. 182-1996, *supra*, y el Artículo 3 de la Ley Núm. 113-2005, *supra*, por infringir el derecho a la libre asociación. Coincidió con lo que expusieron Brutal y el Estado en la vista argumentativa, en términos de que no persistían hechos en controversia y que no existía un interés apremiante que mereciera protección.

Insatisfecho, el Colegio presentó un recurso de *Apelación* ante el Tribunal de Apelaciones. Contando con la comparecencia de Brutal y el Estado, el 21 de junio de 2024 el foro apelativo intermedio emitió una *Sentencia* en la que confirmó el dictamen recurrido. Determinó que correspondía evaluar la constitucionalidad de este asunto bajo el estándar del escrutinio estricto, por lo que le incumbía al Estado demostrar la existencia de un interés apremiante que justificara la colegiación compulsoria. En vista de que el Estado no manifestó que existiera un interés apremiante en su comparecencia, resolvió que no se justificaba la interferencia con el derecho a la libre asociación. Por otro

lado, confirmó que el Departamento de Hacienda, por medio de la OSPEP, era el mecanismo menos oneroso para regular la profesión de productor de espectáculos públicos.

Aún en desacuerdo, el Colegio compareció ante este Tribunal mediante la presentación de un recurso de *Apelación* en el que señaló los siguientes errores:

> Erró el Tribunal de Apelaciones al confirmar la Sentencia apelada y determinar que no existe un interés apremiante del Estado en la colegiación cuestionada, descartando así los precedentes judiciales aplicables.

> Erró el Tribunal de Apelaciones al confirmar la Sentencia apelada y determinar que OSPEP es el ente gubernamental facultado para regular la profesión de productor de espectáculos.

Con el beneficio de las comparecencias de ambas partes, resolvemos.

## II

### A. La moción de sentencia sumaria

"La moción de sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales es innecesario celebrar un juicio plenario". González Santiago v. Baxter Healthcare of Puerto Rico, 202 DPR 281, 290-291 (2019) (citando a Rodríguez Méndez v. Laser Eye, 195 DPR 769, 785 (2016); Oriental Bank v. Perapi et al., 192 DPR 7, 25 (2014)). Lo anterior puede ocurrir cuando solo procede aplicar el derecho a una controversia, puesto que no persistan "controversias reales y sustanciales en cuanto a los hechos materiales". Íd.

Bien sabemos que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Ramos Pérez v. Univisión, 178

DPR 200, 213 (2010). Un hecho material debe estar controvertido de manera real y sustancial para celebrarse el juicio en su fondo; es decir, es necesario que persistan dudas que permitan a un juzgador racional denegar la solicitud. Íd., pág. 214.

La Regla 36.1 de Procedimiento Civil, *supra*, establece que le corresponde a la parte que solicita resolver la controversia por la vía sumaria demostrar que no existe controversia sustancial sobre hechos materiales. Por otro lado, la parte contraria debe presentar evidencia sustancial para refutar los planteamientos de la parte promovente. Ramos Pérez v. Univisión, *supra*, págs. 215-216. Entiéndase, esta "no puede descansar en meras alegaciones". Íd., pág. 215. Además, la Regla 36.2 también permite que la parte contraria solicite que se dicte una sentencia sumaria a su favor. Íd., pág. 213.

La Regla 36.3 de Procedimiento Civil, *supra*, estatuye que procede dictar una sentencia sumaria "si las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material". González Santiago v. Baxter Healthcare of Puerto Rico, *supra*, pág. 291 (citando a Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 225 (2015); SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 430 (2013)). Luego de esto, se podría prescindir de un juicio en su fondo pues solo "resta aplicar el derecho a los hechos no controvertidos". Íd.

Es menester señalar que este Tribunal, al igual que el Tribunal de Apelaciones, está en la misma posición que el Tribunal de Primera Instancia para evaluar los méritos de una sentencia sumaria. Íd. Es decir, "nuestra revisión es *de novo*, y el análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa". Íd. En el caso de que los hechos materiales estén incontrovertidos, debemos revisar *de novo* las determinaciones y concluir si el Tribunal de Primera Instancia aplicó correctamente el derecho. Íd. (citando a Meléndez González et al. v. M. Cuebas, 193 DPR 100, 118 (2015)).

**B. El derecho a la libre asociación**

Nuestra Constitución consagra de manera expresa el derecho a la libre asociación, en la cual se establece que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares". Art. II, Sec. 6, Const. ELA, LPRA, Tomo 1, ed. 2016. A pesar de que el texto de la Constitución articula el derecho a la libre asociación en su vertiente positiva, también hemos reconocido el derecho en su vertiente negativa, es decir, el derecho a no asociarse. Rodríguez Casillas et al. v. Colegio, 202 DPR 428, 449 (2019); Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR 791 (2014).

Este no constituye un derecho absoluto, por lo que puede ceder ante intereses de mayor jerarquía o situaciones que revistan un alto interés público. P.N.P. v. De Castro Font II, 172 DPR 883 (2007); P.A.C. v. E.L.A. I, 150 DPR 359

(2000); Democratic Party v. Tribunal Electoral, 107 DPR 1 (1978). Por esto, hemos expresado que cualquier acción del Estado sobre el derecho a la libre asociación se analiza bajo el estándar de escrutinio estricto. Rivera Schatz v. ELA y C. Abo. PR II, *supra*, pág. 813; Rodríguez Casillas et al. v. Colegio, *supra*, págs. 449-450.

El análisis que se lleva a cabo en el escrutinio estricto es de extrema rigurosidad; por ende, la ley impugnada se presumirá inconstitucional. Rodríguez Pagán v. Dpto. de Servicios Sociales, 132 DPR 617, 635 (1993). No obstante, el Estado puede legislar de manera que interfiera con este derecho, siempre y cuando demuestre que existe un interés colectivo de superior jerarquía y que la medida adoptada promueve su consecución. Rodríguez Pagán v. Dpto. de Servicios Sociales, *supra*, pág. 635.

El estándar de escrutinio estricto requiere evaluar dos criterios. El Estado debe demostrar que: (1) la acción cuestionada sirve un interés gubernamental apremiante y (2) no tenía a su alcance un medio menos oneroso para cumplir con este interés. Rodríguez Casillas v. Colegio, *supra*, pág. 467; Rivera Schatz v. ELA y C. Abo. PR II, *supra*, pág. 813; Domínguez Castro v. ELA, 178 DPR 1, 87-88 (2010); Calo Morales v. Cartagena Calo, 129 DPR 102, 133 (1991). En cuanto al primer criterio, el Estado tiene el deber de identificar la existencia de un interés de alta jerarquía; no basta con identificar cualquier tipo de interés gubernamental. Algunos ejemplos de intereses gubernamentales que se han reconocido como apremiantes son: **la regulación de distintas profesiones;**

la salud pública; proteger el bienestar de los menores; investigar y combatir el crimen, y mantener la integridad de la rama judicial y la confianza del pueblo en un sistema judicial imparcial. Rexach v. Ramírez, 162 DPR 130 (2004); El Pueblo de Puerto Rico v. Santiago Feliciano, 139 DPR 361 (1995); Williams-Yulee v. Florida Bar Supreme Court of the United States, 575 US 433 (2015).

Luego de identificar la existencia de un interés apremiante, corresponde evaluar si existe una medida menos onerosa para protegerlo. Rodríguez Casillas et al. v. Colegio, supra, pág. 450; Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813. La Corte Suprema de los Estados Unidos ha explicado que esto significa evaluar si el acto impugnado es necesario para adelantar el interés apremiante que el Estado identificó. City of Richmond v. J.A. Croson Co., 488 US 469, 471 (1989).

Asimismo, la Corte Suprema de los Estados Unidos explicó qué significa evaluar el criterio de la existencia de un medio menos oneroso en U.S. v Playboy Entertainment Group, Inc., 529 US 803 (2000). La Corte enfatizó que no es suficiente apuntar a la existencia de una alternativa que podría cumplir con el interés apremiante del Estado, sino que corresponde evaluar la viabilidad y la efectividad de las medidas alternativas para asegurar que cumpliría con su propósito. Este es el mismo ejercicio analítico que incorporé en Reyes Martínez v. Colegio de Cirujanos Dentistas de Puerto Rico, 2025 TSPR 15, al igual que en otras ponencias en las que expresé mi postura en contra de la descolegiación. Véase,

además, <u>Delucca Jiménez v. Colegio de Médicos Cirujanos de Puerto Rico</u>, 213 DPR 1, 35 (2023) (Opinión disidente de la Jueza Presidenta Oronoz Rodríguez); <u>Román Negrón y otros v. Col. CPA y otros</u>, 212 DPR 509, 511 (2023) (Opinión de conformidad de la Jueza Presidenta Oronoz Rodríguez); <u>Reyes Sorto v. ELA</u>, 212 DPR 109, 111 (2023) (Opinión de conformidad del Juez Asociado señor Rivera García, a la cual se unieron la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez).

### C. La Ley del Promotor de Espectáculos Públicos

La Ley Núm. 182-1996, *supra*, se aprobó con el propósito de reglamentar la profesión del promotor de espectáculos públicos y así establecer los requisitos que los integrantes de esta profesión deben cumplir para formar parte de ella. El Artículo 3 de esta ley, 15 LPRA sec. 2002, estatuye la creación de un Registro de Promotores de Espectáculos Públicos (Registro) adscrito al Departamento de Hacienda. Por su parte, el Artículo 4 de la Ley, 15 LPRA sec. 2003, establece, entre otros, los siguientes requisitos para actuar como promotor artístico: (1) ser mayor de edad; (2) tener una licencia expedida por el Registro, en particular, la OSPEP; (3) pagar un impuesto anual por concepto de derechos de licencia de doscientos dólares ($200), y (4) prestar una fianza anual.

Conforme a la ley, la OSPEP, adscrita al Departamento de Hacienda, supervisará que los promotores cumplan con la prestación de la fianza. Véase 15 LPRA sec. 2003. Ante un incumplimiento, esta oficina impondrá las multas que entienda

pertinentes. Íd. Además, la OSPEP se encargará de reglamentar los refrendos de taquillas, el uso de boletos electrónicos y de aquellos dispositivos electrónicos y digitales análogos estos, así como lo ateniente al cobro del impuesto de venta y uso (IVU). 15 LPRA sec. 2006.

En lo pertinente, el inciso (i) del Artículo 4, *supra*, establece que los promotores de espectáculos debidamente licenciados deben ser miembros del Colegio o asociarse a un miembro de este colegio. Por su parte, el Artículo 6, 15 LPRA sec. 2005, establece que aquella persona que actúe como promotora dentro de la jurisdicción Puerto Rico sin estar debidamente registrada y sin obtener una licencia expedida por la OSPEP o, en la alternativa, sin haberse asociado a un miembro del Colegio, será multada por la cantidad de diez mil dólares ($10,000). También, sanciona al empresario que preste o alquile un local o área para la realización de un evento a cualquier persona que no sea un promotor registrado.

   D. **La Ley del Colegio de Productores de Espectáculos Públicos de Puerto Rico**

La Ley Núm. 113-2005, *supra*, dispone la creación y la organización del Colegio, y especifica sus funciones, facultades y deberes. Además, establece la reglamentación del Colegio y fija las penalidades por incumplir con lo expuesto en la referida ley. El Artículo 3, 15 LPRA sec. 2012, estatuye que únicamente podrán fungir como promotores de espectáculos públicos aquellos que estén colegiados y cumplan anualmente con un mínimo de seis (6) horas crédito de educación continua,

o aquellos promotores no establecidos en Puerto Rico que se asocien con promotores debidamente colegiados.

El Artículo 4, 15 LPRA sec. 2013, establece las funciones y los poderes del Colegio. En lo pertinente, el inciso (g) de este Artículo expone que el Colegio adoptará unos Cánones de Ética Profesional que regirán tanto la conducta de sus miembros como los procedimientos para recibir, investigar y adjudicar las querellas que se formulen con respecto a la práctica y la conducta de los colegiados. Íd. Asimismo, faculta al Colegio para imponer sanciones por violentar los preceptos éticos. Por otro lado, el inciso (x) de este mismo artículo faculta al Colegio para desarrollar una guía básica para orientar a los nuevos miembros que ingresan respecto a las obligaciones éticas y profesionales, al igual que los deberes, las obligaciones y derechos del miembro colegiado ante el Colegio y la OSPEP. Íd.

El Artículo 6, 15 LPRA sec. 2015, establece una serie de disposiciones generales respecto a la OSPEP:

> La [OSPEP] continuará siendo el organismo, mediante el cual los promotores y productores de espectáculos en Puerto Rico refrenden sus inventarios de boletos y rindan cuenta de sus operaciones al Gobierno del Estado Libre Asociado de Puerto Rico. Asimismo[,] será el organismo ante el cual las personas o entidades aspirantes a adquirir una licencia y Colegiación, así como los productores no establecidos en Puerto Rico, hagan constar su participación en el negocio de los espectáculos públicos. OSPEP continuará siendo la entidad bajo la autoridad del Departamento de Hacienda que expedirá la licencia a los aspirantes los cuales según lo establece el Artículo 13 de esta Ley, deberán obtener la membresía del Colegio como requisito para dicha licencia.

En cuanto a las penalidades, el Artículo 10, 15 LPRA sec. 2019, estatuye que todo productor de espectáculos públicos que no esté colegiado y ejerza como tal, incurrirá en delito menos grave y se le impondrá una multa entre

quinientos dólares ($500) y mil dólares ($1,000) por ocurrencia.

### III

En su recurso apelativo, el Colegio solicita la revocación de los dictámenes emitidos por los foros inferiores por estos confirmar la inconstitucionalidad del Artículo 4(i) de la Ley Núm. 182-1996, *supra*, y el Artículo 3 de la Ley Núm. 113-2005, *supra*, por infringir el derecho a la libre asociación. Esboza que, en aras de proteger la seguridad y el bienestar del público espectador mediante la reglamentación de esta profesión, la legislatura consignó de manera expresa los intereses apremiantes en la legislación impugnada. En particular, interpreta que estas leyes buscan disuadir el desempeño deficiente de la industria y asegurar la calidad profesional de los promotores. Por esto, determinó que la colegiación compulsoria es necesaria para sostener el esquema regulatorio de la producción de espectáculos públicos en Puerto Rico.

Por otro lado, el Colegio expuso la insuficiencia de la OSPEP como alternativa viable, pues la legislación aplicable no le delegó las facultades requeridas para reglamentar la profesión y la conducta de sus integrantes. En ese sentido, recalca que esta oficina mayormente maneja asuntos fiscales y que no cuenta con la estructura organizacional necesaria para asumir las responsabilidades del Colegio. Informa que, precisamente, buscaba establecer este hecho mediante el descubrimiento de prueba, pero el foro de instancia le privó de esta oportunidad.

Según surge de la exposición que antecede, cualquier mandato legislativo que imponga la colegiación compulsoria deberá evaluarse bajo el estándar del escrutinio estricto. Para efectuar esta evaluación, le corresponde al Estado primero demostrar la existencia de un interés apremiante que justifique la obligatoriedad de la colegiación. Establecido lo anterior, debe probar que no existen medidas menos onerosas para adelantar este interés.

Según surge de la *Minuta* de la vista celebrada el 6 de diciembre de 2023, el Estado manifestó que no comparecería en defensa de la colegiación compulsoria. Expuso que, luego de realizar un análisis jurídico en cuanto a la profesión de promotores de espectáculos públicos, no existe un interés apremiante bajo la legislación impugnada. Por lo tanto, el Estado esbozó que el requisito de colegiación que se le impone a los promotores de espectáculos carece de un interés apremiante.

Ambos foros recurridos apoyaron esta conclusión sin mayor reflexión. Ambos prescindieron de llevar a cabo el descubrimiento de prueba requerido para sustentarla, a pesar de que el ente que efectivamente ha regulado la profesión manifestó que persistían intereses apremiantes que ameritaba un estudio más profundo que el descubrimiento hubiera permitido. **No podemos avalar este proceder, puesto que el acto de declarar la inconstitucionalidad de una ley requiere de los tribunales el ejercicio pleno de su función adjudicativa, la cual no puede realizarse si existen lagunas para sustentar una conclusión.**

De un análisis de las piezas legislativas en pugna se desprende que la OSPEP tiene la facultad de licenciamiento sobre la profesión de promotores de espectáculos en Puerto Rico. De igual forma, la Ley Núm. 182-1996 establece que la OSPEP reglamenta y trabaja los refrendos de taquillas, el uso de boletos y dispositivos electrónicos y digitales análogos, y lo atinente al cobro del IVU. Asimismo, el Artículo 6 de la Ley Núm. 113-2005, *supra*, especifica que la OSPEP es el organismo mediante el cual los promotores de espectáculos rinden cuenta de sus operaciones al Estado y ante el cual hacen constar su participación en el negocio de los espectáculos públicos.

Sin embargo, **el Colegio es la entidad que lleva a cabo los procesos disciplinarios y adjudicativos, y regula la educación continua de sus integrantes.** Esto es precisamente lo que persigue el estatuto que exige la colegiación compulsoria. Según establece la Exposición de Motivos de la Ley Núm. 113-2005, la colegiación de los promotores busca reglamentar la profesión mediante la creación de un código de ética que asegura "la calidad profesional y la competitividad de los productores". En ese sentido, la colegiación uniforma la práctica de esta profesión y establece "un mecanismo de monitoría sobre las prácticas de negocios de los promotores y productores". Íd. Entiéndase, **este colegio profesional ostenta las funciones requeridas que hacen las veces de reglamentar la profesión.**

Sin embargo, producto de un curso apresurado que siguió el asunto que hoy tenemos ante nuestra consideración, no se

logró definir el rol y las funciones de ambas entidades de manera definitiva. En su lugar, se dispuso del caso mediante el mecanismo de la sentencia sumaria, sin llevarse a cabo un proceso de descubrimiento de prueba amplio que permitiera pasar juicio de forma adecuada sobre los asuntos que atañan la regulación de la profesión.

A grandes rasgos, es importante determinar si la OSPEP tiene el andamiaje necesario para asumir las responsabilidades que actualmente ostenta el Colegio. En particular, corresponde dirimir si la OSPEP tiene los recursos económicos y el personal necesario para reglamentar la profesión ante los planteamientos del Colegio sobre que esta entidad cuenta con solo dos (2) empleadas. Asimismo, procede determinar las funciones de la OSPEP, de tal manera que nos permita concluir si verdaderamente es una alternativa real, viable y efectiva, puesto que el Colegio esbozó que esta se limita a ejercer funciones fiscales, específicamente, sobre la captación de impuestos y el refrendo de taquillas.

El Colegio debe tener la oportunidad de descubrir evidencia para sustentar sus alegaciones sobre el manejo efectivo de la profesión que está llamado a regular. Por esto, era necesario devolver este caso al Tribunal de Primera Instancia y ordenar que se permitiera el descubrimiento de prueba solicitado. Así, este Tribunal estaría mejor posicionado para atender la presente controversia. Hacer lo contrario podría inducirnos a error, ya que carecemos de los elementos necesarios para aquilatar de manera contundente si la colegiación compulsoria de los productores de espectáculos

públicos adelanta el interés del Estado en reglamentar la profesión. Ante este cuadro fáctico, disiento.


Maite D. Oronoz Rodríguez
Jueza Presidenta